GBLJTUZC                         Conference

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                          S7 15 Cr. 536 PGG

 5   OMAR AMANAT and
     KALEIL ISAZA TUZMAN,
 6
                  Defendants.
 7
     ------------------------------x
 8

 9

10                                      November 21, 2016
                                        12:36 p.m.
11

12

13   Before:

14                      HON. PAUL G. GARDEPHE,

15                                        District Judge

16

17                        APPEARANCES

18

19   PREET BHARARA,
          United States Attorney for the
20        Southern District of New York
     ANDREA MICHELLE GRISWOLD,
21   A. DAMIAN WILLIAMS,
          Assistant United States Attorneys
22

23

24

25
```

GBLJTUZC                          Conference

(APPEARANCES Continued)


CREIZMAN, PLLC,
        Attorneys for defendant Amanat
BY:   ERIC M. CREIZMAN, Esq.
        CAROLINE POLIZI, Esq.
                   Of counsel



BEYS, STEIN & MOBARGHA, LLP,
        Attorneys for defendant Tuzman
BY:   MICHAEL  PETROS BEYS, Esq.
        – and –
GIBSON, DUNN & CRUTCHER, LLP (NY)
BY:   AVI WEITZMAN, Esq.
                   Of counsel


Also Present:
        DANIEL SANFORD, Special Agent FBI
        MELISSA ATLEIN, Inspector, U.S. Postal Service

 1              (In open court)

 2              (Case called)

 3         THE COURT:  Okay.  Ms. Griswold or Mr. Williams, bring

 4    me up to speed on discovery.  I gather there has been some

 5    additional material provided recently, but what is the current

 6    status of discovery?

 7         MS. GRISWOLD:  Certainly, your Honor.  Since we were

 8    last here on September 22, we have unsealed charges against

 9    cooperator Gavon Champion.  We expect that there will be a

10    modest amount of additional discovery to be produced in

11    connection with those charges.  Specifically, Mr. Champion,

12    through counsel, produced certain documents to the government.

13              These are largely corporate documents such as e-mails

14    and documents Mr. Champion sent and received while at Kitt

15    Digital.  Most of these materials are duplicative of what is

16    already produced.  We do intend to produce a complete set of

17    Champion materials within the next week or two.  I will

18    describe the volume of those as modest, a couple of binders

19    worth of documents.

20              Since we also were here on September 22nd at the last

21    conference, you recall there was discussion about the level of

22    overlap between the documents produced to Mr. Tuzman in the

23    civil case and those produced in the criminal case, and the

24    court asked the parties to work on resolving those issues.

25              At the time the government didn't have all of the

GBLJTUZC                    Conference

1   documents that were produced to Mr. Tuzman in the SEC case, but

2   recognizing that this is a unique case where one defendant,

3   Mr. Tuzman, had documents that the other other defendant didn't

4   have, we decided to obtain the SEC's entire production and

5   produce it to Mr. Amanat.  We expect to have that today, and

6   once we have it and copy it, we will promptly produce it to

7   Mr. Amanat.

8          Turning to the Maiden discovery, the government has

9   produced since the last conference images of two computers that

10  were voluntarily provided by Mr. Maiden, another cooperator in

11  this case, to the FBI in the Western District of North Carolina

12  in or about the summer of 2013.  One is a desktop and one is a

13  laptop.  We produced those images on November 16th.

14         We have extracted the non-email documents from the

15  images and created a load file that makes them searchable and

16  have offered to produce that to defense counsel.  I would note,

17  just to give a sense of volume and context, that there are

18  approximately 11,000 documents in total on the two devices.

19  Those are the non-email documents, and just to put that in

20  context, I believe there are about two million pages was the

21  reference defense counsel gave in terms of the discovery that

22  has already been produced to date.  I believe that is several

23  hundred thousand documents.

24         In addition to the com-portance load file that we have

25  offered to produce for the non-email documents, we have also

1    extracted five PSD files containing the e-mails on Mr. Maiden's

2    computer and will have also offered to produce those so that

3    they can be searched.

4           In addition to that, we have continued to investigate

5    the case, obviously, and to that end we do expect to produce

6    some additional e-mails from an e-mail account within the next

7    couple of weeks.  We don't anticipate any motion practice from

8    these e-mails.  We don't expect to produce any e-mails from

9    accounts controlled by the two defendants, and because of

10   ongoing law enforcement issues, we are not able to indicate any

11   more detail, but we can, of course, provide the court more

12   information about those e-mails if you would like.

13          That is the status of the discovery in this case.

14          THE COURT:  In light of what has taken place, in light

15   of the statements that Ms. Griswold has made this morning, are

16   there remaining discovery issues that the lawyers want to

17   raise, the defense lawyers?

18          I have a motion to compel before me, so obviously I

19   want to know whether what Ms. Griswold has said moots out that

20   motion either in whole or in part.

21          MR. BEYS:  Your Honor, if I may, I would like to

22   address the big picture, and then I will ask Mr. Weitzman to

23   speak specifically to the motion to compel.

24          What we just heard from Ms. Griswold is eerily

25   familiar.  We heard on September 22 that discovery was

GBLJTUZC                    Conference

1    substantially complete and, in fact, once we brought a motion

2    to compel, it turned out that there was much voluminous

3    additional discovery.  Now, the 11,000 documents that she is

4    referring --

5             THE COURT:  I would like to focus on what remains in

6    dispute with respect to the motion to compel.  If you could

7    address that or have Mr. Weitzman address that, I would

8    appreciate it.

9             MR. BEYS:  The short answer is I don't think we know

10   yet.

11            THE COURT:  That is an answer.  If you don't know yet,

12   that is an answer.  I have a motion in front of me, a

13   representation made by the government, and I want to know is

14   the motion still in dispute or is it not?

15            MR. WEITZMAN:  Your Honor, the motion is still in

16   dispute.  I am happy to address why it is still in dispute.  We

17   don't believe it has been mooted, on multiple grounds.  There

18   are some grounds that have been mooted and some that have not.

19   We can do it either today orally, or we can put it in a reply

20   submission if your Honor would prefer.

21            THE COURT:  If it is complicated, it would be best to

22   have it done in writing.

23            MR. WEITZMAN:  We are happy to do that.

24            MR. CREIZMAN:  Ours is largely mooted, I think, except

25   for one aspect which we raised that the government mentioned

1   the SEC had in its possession a portfolio that belonged to Mr.

2   Maiden.  We requested that we obtain access to any Skype

3   messages, computer telephone calls that may have occurred that

4   are on Mr. Maiden's computer.  I am not sure whether the

5   government or the SEC has looked into that, but that would be

6   our principal issue.

7            THE COURT:  Okay.  Both with respect to Tuzman and

8   Amanat, if you could send me a letter, say, a week from today

9   telling me what remains in dispute, and then the government can

10  respond to that letter, then I'll have an understanding of what

11  remains in the motion to compel.

12           Mr. Beys, is there anything else you want to say about

13  discovery before I turn to other matters?

14           MR. BEYS:  Regarding discovery specifically, your

15  Honor, no.  The motion to compel.  Ms. Griswold mentioned the

16  additional discovery on November 16th.  We only got a hard

17  drive on Friday, so we're still reviewing that.

18           No, that is all for now.

19           THE COURT:  Okay.  The lawyers, defense counsel, have

20  told me they wish to make a number of motions, including a

21  motion to dismiss, also a motion for severance.  There may be

22  additional motions with respect to discovery, I don't know, but

23  I am going to set a schedule for all defense motions.  All

24  defense motions will be due on January 31st.  The government

25  will respond by February 21st.  Any reply will be due on

GBLJTUZC                          Conference

1    February 28th.

2            There is an issue I wanted to raise about this

3    privilege question about the Maiden documents.  The government

4    has sent me a letter, dated November 17th.  It is Docket No.

5    171, and they say that this issue about privilege is actually

6    in front of Judge Nathan, who has the SEC civil enforcement

7    action against Mr. Tuzman, and the government says that any

8    issues about privilege should be addressed by her.

9            I am going to want the defense counsel to respond to

10   the government's letter and essentially tell me why I should

11   get involved in this if it remains a live issue, and I might

12   say it is not clear to me what remains live based on what has

13   been turned over and what has been promised to be turned over.

14           Assuming there are live issues that remain about the

15   Maiden production other than the Skype point that has been

16   made, assuming there are, and assuming there are privilege

17   issues that are live, the government says well, these are

18   essentially in front of Judge Nathan so I shouldn't get

19   involved in that.  You can either address it now or you are

20   welcome to send me a letter, but I need so response to that.

21           MR. WEITZMAN:  The privilege issue is not moot.

22           What has happened here is that after several months

23   when Mr. Maiden's counsel and the SEC has taken the position

24   that these two documents which we received were privileged, now

25   in the face of a waiver of privilege, which can be much broader

1    than than just the two documents, Mr. Maiden has taken the

2    position that for the first time these documents were never

3    privileged even though they say, "attorney-client privileged"

4    on them and he represented in a letter they were prepared at

5    the request of counsel.  I won't call names, but we know what

6    that is.  He is trying to avoid a privilege waiver, a privilege

7    waiver that is indefensible as a result of the 2000 wholesale

8    production of two computers to the FBI.

9              THE COURT:  When did that happen?

10             MR. WEITZMAN:  In 2013.  And then in 2014 he produces

11   I don't know if it is the same two computers or maybe a later

12   version, the same two computers with additional documents to

13   the SEC, and he attempts failingly to preserve some privilege.

14             The issue that is before your Honor and not before

15   Judge Nathan will be the scope of that privilege waiver.  There

16   is an absolute waiver here.  We plan, I will tell --

17             THE COURT:  Why is that not before her?

18             MR. WEITZMAN:  There are no discovery, no subpoenas

19   outstanding in the SEC case.

20             THE COURT:  I thought document discovery was ongoing

21   in that case.  Am I mistaken?

22             MR. WEITZMAN:  No.  You are correct.  We issued no

23   subpoenas in that case.  We plan to issue and request your

24   Honor to grant a subpoena to be issued to Mr. Maiden's counsel.

25   The privilege waiver is so absolute that the issue needs to be

GBLJTUZC                          Conference

1    cited here.  There is exculpatory evidence that we have

2    identified just in two documents and we plan to litigate in

3    this courtroom the scope of that waiver.

4              THE COURT:  I will hear from the government.

5              MS. GRISWOLD:  Your Honor, the question is whether

6    there are documents on the SEC version of the Maiden computers

7    that are not on the FBI version, and if there are, those are

8    documents that have only been produced in the case before Judge

9    Nathan.

10             So from the government's perspective, the idea that

11   that should be brought in the criminal case before your Honor

12   to decide what the status is of those documents, and if there

13   was a waiver as to those documents, if that creates a broader

14   global waiver, should clearly go before Judge Nathan.

15             THE COURT:  What do you say in response to Mr.

16   Weitzman's point?

17             He says that the issue is not ripe in front of Judge

18   Nathan.  That is my sense of it.

19             MS. GRISWOLD:  I am not sure I understand the point.

20             Discovery is ongoing in the case before Judge Nathan

21   just as it is ongoing before your Honor.  There is litigation

22   going on in the civil case before Judge Nathan.  In fact, I

23   believe there is a pending motion to dismiss the complaint in

24   that case.  So I don't think it's raised any more

25   appropriately -- in fact, less appropriately before your Honor

1    than before Judge Nathan.  Again those documents have only been

2    produced in the SEC case pending before her.

3          MR. WEITZMAN:  I am not sure why the government is

4    preferring to litigate this before Judge Nathan, but it seems

5    very clear to me that we have filed a motion that says this is

6    a joint investigation, the FBI and U.S. Attorney's Office and

7    SEC.

8          The U.S. Attorney's Office is obligated to take all

9    the documents in the possession of the SEC and produce them

10   under Rule 16, Brady and Giglio.  The government responded and

11   relegated that response to a single footnote in which they

12   attempted to distinguish Martoma.  I suspect they're trying to

13   avoid your Honor's ruling in Martoma and the critical review

14   your Honor gave to whether there is a joint investigation here.

15   That is still a live issue that was entirely avoided by the

16   government's response.

17         MS. GRISWOLD:  Your Honor, respectfully, if the

18   documents are not in the possession of the SEC properly, then

19   the whole Martoma issue, if you will, in terms of what the

20   government's obligations are or are not, whether or not the

21   government has an obligation to look into those files, you

22   don't reach that until the threshold question is answered,

23   namely, whether or not those documents that have to date been

24   produced only in the SEC action are properly in the custody and

25   control of the SEC.

GBLJTUZC                    Conference

1          Without taking that up in front of Judge Nathan in the

2    first instance, we don't see how any questions that might flow

3    from that could be resolved.

4          MR. WEITZMAN:  Just one more point, and I apologize

5    for the delay.  We served our motion on the SEC and on Mr.

6    Maiden.  Mr. Maiden responded with a two-page letter that for

7    the first time contradicted his prior admission these are

8    privileged documents, and reserves and asks for an opportunity

9    to respond which I think frankly is waived.  He had an

10   opportunity to respond.  The SEC didn't even attempt to

11   intervene or respond to preserve its rights.  The government

12   hasn't even raised this issue until now for the first time.

13          I don't think the government's proper position here

14   should be to lob a six-page letter saying everything is moot,

15   nothing to see here when we filed very serious motions that

16   suggest there is a joint investigation and the government has

17   not complied with its discovery obligations.

18          Frankly, in light of the fact they produced 500

19   gigabyte, two 550 gigabyte hard drives that contain two

20   computers that the FBI have had for three years and the U.S.

21   Attorney's Office apparently never received them prior, it begs

22   the question of what else has the U.S. Attorney's not sought

23   within its possession.

24          The FBI and Postal Inspection is here.  I think we

25   need to make sure that they've collected all the documents in

GBLJTUZC                      Conference

1    the FBI and Postal Service's possession and produce them and

2    review them for Brady and Giglio.  There are live issues that

3    remain.  The SEC hasn't intervened to raise this issue that Ms.

4    Griswold is raising for the first time and Mr. Maiden has

5    waived any further response.

6              THE COURT:  Do you know what the difference is between

7    what you referred to as the FBI images of the Maiden computers

8    and the SEC images?

9              MR. WEITZMAN:  You're asking me?

10             THE COURT:  I am asking the government.

11             MS. GRISWOLD:  What we do know is that between

12   approximately the summer of 2013 when the computers were imaged

13   and given to the FBI and the time that they were imaged by the

14   SEC in November of 2014, to the extent that there were

15   privileged documents or other documents added to the computers

16   during that time period, those are likely to be on the images

17   that the SEC has and not on the images that the FBI has that

18   were produced in the criminal case.  Beyond that, the SEC is

19   currently undertaking a forensic analysis to compare.  They now

20   have the FBI versions so that they can tell us with more

21   precision what is on those documents.

22             What is on the SEC computers, not on the FBI ones, I

23   would note the time period of the charged allegations and the

24   conduct here with respect to Mr. Maiden I think highlighted by

25   the two documents at issue, raised in Mr. Tuzman's motion, a

GBLJTUZC                        Conference

```
 1    lot of that conduct, the bulk of that conduct was completed
 2    prior to the time that the computers were imaged by the FBI.
 3    That would suggest to us that at least we know for a fact those
 4    two documents are on the FBI images and give some suggestion
 5    what may be on the SEC version, but not on the FBI.  We won't
 6    know until the forensic analysis is completed.
 7              THE COURT:  What is the time period of the charged
 8    conspiracy?  What is the time period in the indictment?
 9              MS. GRISWOLD:  There are multiple charges, as you
10    pointed out.  The most relevant charge would be the market
11    manipulation conspiracy, which is Count 4 in the current S7
12    indictment, and that is between in or about December of 2008
13    and in or about September of 2011.
14              So your Honor is making the point that I was trying to
15    make which is that by that end date of September 2011, the
16    computers were imaged in 2013.
17              THE COURT:  It seems somewhat dubious, Mr. Weitzman,
18    there will be a lot of relevant stuff years after the period of
19    the charged conspiracy.
20              MR. WEITZMAN:  Is disagree, your Honor.
21              The two documents we firmly believe are exculpatory
22    that postdate the date of the conspiracy are work product that
23    Mr. Maiden created at counsel's request to summarize his
24    allegations about my client.  Those documents, for example, not
25    one of them mentions that my client ever provided a single
```

1    instruction in coded language, text message or e-mail that

2    caused Mr. Maiden to buy Kitt Digital stock.  This is a 15 or

3    20 page, single-spaced dissertation of everything he knows

4    about my client, and all of a sudden those allegations

5    disappear.  Not one --

6              THE COURT:  All right.  I have heard enough.

7              MR. WEITZMAN:  His correspondence with counsel is very

8    important and potentially exculpatory.

9              THE COURT:  I understand.  I understand.

10             It was my hope that, first of all, it sounded like so

11   much of the Maiden materials have already been turned over.  I

12   came down thinking the issue was largely mooted.  The

13   government also said the issue was largely mooted.  I hear from

14   defense counsel it is not really moot.

15             If the parties are intent on litigating this issue, it

16   is a complicated one and I am going to require, going to need a

17   formal response from the government.  A letter is not going to

18   do it.  I am going to need affidavits laying out or addressing

19   the issue of whether this was a joint investigation or wasn't a

20   joint investigation.  I am going to need formal briefing.

21             My general understanding that I shared with you

22   sometime ago, probably in September, was that a wholesale

23   production by Mr. Maiden of his documents and electronically

24   stored information would ordinarily constitute a full waiver of

25   any attorney-client privilege.  I have read some things in the

GBLJTUZC                        Conference

 1    correspondence or some of the other documents I have been given

 2    which suggest there may have been some agreement between the

 3    SEC and Mr. Maiden's counsel about protecting the

 4    confidentiality of the documents.

 5            Those types of agreements are looked at with a

 6    somewhat jaundiced eye by most circuits.  The leading case in

 7    this circuit, as far as I know, unless there has been more

 8    recently authority is the Steinhart case.  Steinhart suggests

 9    that there may be an exception where the government agency has

10    received documents pursuant to some sort of agreement to

11    protect them.

12            As I said, that view has been largely rejected almost

13    uniformly by every other circuit in the United States.

14    However, if there is no more recent authority than Steinhart in

15    the Second Circuit, it may actually present an issue, a

16    significant issue.  I say this just to say that if the parties

17    can't reach some agreement about how the Maiden materials are

18    going to be handled, and part of the frustration is here I am

19    not really clear on what remains in dispute, and the FBI

20    computer images have to be compared to the SEC computer images,

21    so I don't even know what the difference is going to be or

22    whether it is going to be significant.

23            If there are differences between what was secured by

24    the FBI and what was later obtained by the SEC, and if

25    privilege is being asserted by Mr. Maiden as to those

GBLJTUZC                          Conference

1  additional materials that are on the SEC images but not on the

2  FBI images, then it will raise a significant issue.  Obviously,

3  I will give Mr. Maiden's counsel an opportunity to address the

4  matter as well.

5          So, Ms. Griswold, do you have a sense of when it is

6  going to be resolved, what the difference is between the SEC

7  images and the FBI images?

8          MS. GRISWOLD:  Your Honor, we are hopeful, given the

9  volume of materials, it will be a matter of weeks, but we don't

10  know because we haven't heard definitively.

11          What I would propose is as soon as we do know, the

12  government can update the court and the parties as to either

13  the timing in the first instance and then what the results of

14  the forensic comparisons show so we have more guidance as to

15  how the court would like to move forward.

16          THE COURT:  What do you say, Mr. Weitzman?

17          It seems like it is a moving target until we actually

18  know what the difference is, we're dealing with sort of an

19  amorphous, abstract issue.  What do you say?

20          MR. WEITZMAN:  I agree with you, your Honor, to some

21  extent.  My concern is that we have a January deadline for all

22  defense motions.  If those are motions that go to the

23  indictment or severance, I'd understand.  If I understood your

24  Honor correctly, it is all discovery motions.  I think that

25  that type of moving target with motion practice as well makes

GBLJTUZC                    Conference

1    it very difficult for us to comply with that January deadline.

2    If we can limit that deadline, I think I am amenable to it.

3    There is one question I have, though, in addition which is that

4    we do plan to present subpoenas that we think are warranted as

5    a result of the discussion here.

6            Will your Honor accept those by letter or by motion on

7    an ex-parte basis?

8            THE COURT:  Yes.  Yes, and you can send them with a

9    letter.  It doesn't need to be a formal motion.

10           MR. WEITZMAN:  Thank your Honor.

11           THE COURT:  Well, I am not going to limit the dates.

12   My hope is that -- I am not going to limit the nature of the

13   motions that have to be filed on January 31st.  My hope is

14   that -- and, Ms. Griswold, I want you to make this happen -- I

15   want you to tell the SEC we need rapid action on this computer

16   comparison that we have been talking about because I don't want

17   that to delay the proceedings here.

18           Absent this problem of knowing what is actually in

19   dispute, I would want briefing now on the Maiden issue and I

20   would want affidavits setting out what the nature of the

21   investigation was and whether it was joint or whether it was

22   not joint, and all of that.  I can't do that because I don't

23   really know what is in dispute yet.

24           So we're being held hostage really to that issue, and

25   I don't want to disturb the motion schedule I've set up because

GBLJTUZC                    Conference

1    we don't have clarity on that.  I'll have to if we don't have

2    clarity on it in enough time for defense counsel to adequately

3    brief the issue, and Maiden's counsel as well.

4                So, Mr. Weitzman, something else you want to say?

5                MR. WEITZMAN:  Yes, your Honor.  I apologize.

6                I think I misunderstood your Honor's question to me.

7    As to the overlap between the 2013 production which was a

8    wholesale production and the 2014 which attempted to preserve,

9    I agree that we need to resolve whether there is overlap and

10   how absolute that is.

11               As to the joint investigation issue, that is an

12   entirely separate issue that should proceed now in order to

13   permit us to file motions by January.  The joint investigation,

14   I have not heard a representation that, other than the Maiden

15   documents, the government has everything the SEC has.  That is

16   not a representation anybody has ever made to the court or to

17   us, so there is still an obligation, in our view, for the U.S.

18   Attorney's Office to take possession of the SEC's files.  I

19   think we should proceed on that issue.

20               On the issue of the waiver and how absolute the waiver

21   is, that also doesn't require an understanding of the overlap

22   because the waiver is necessitated by the 2013 production.  All

23   the facts necessary to understand the waiver can proceed now.

24               THE COURT:  Let's start with the first point.  I

25   guess -- well, let me start with the second point you made.

GBLJTUZC                      Conference

1        If it turns out that there is -- maybe there won't be

2    entire overlap, but if there was entire overlap, wouldn't it be

3    wasteful to engage in briefing on the subject?

4        MR. WEITZMAN:  No, because our position is the fact

5    the computers were turned over doesn't end the inquiry of what

6    additional documents Maiden and his counsel have that would be

7    responsive and need to be turned over.  That is why I want to

8    present a subpoena to your Honor.  That litigation is going to

9    proceed whether on this track or I think a separate track

10   because once we serve that subpoena, I am sure they will move

11   to quash.

12        THE COURT:  I thought you were agreeable to the idea

13   we needed to figure out what was the difference between what

14   was on the FBI images and what was on the SEC images?  I

15   thought you agreed with that, but now what you're saying to me

16   suggests you actually don't agree with that?

17        MR. WEITZMAN:  As I thought about it some more, I

18   think it does address an issue that is in play, but isn't an

19   outcome-determinative issue as to several of the questions that

20   remain pending before your Honor.

21        THE COURT:  What does the government say?

22        MS. GRISWOLD:  We think that additional information is

23   very important.  It may be if there is no difference between

24   the two computers, that there really is no issue.  As I

25   represented before, the government has undertaken and expects

GBLJTUZC                        Conference

1    to receive today the entirety of the SEC's document production

2    in this case, so we do believe that having more information

3    will certainly guide what future practice, if any, needs to

4    take place, and we hear your Honor about the need for rapid

5    comparison and will replay that promptly to the SEC.  We think

6    the far more logical path forward is to see what that

7    comparison shows and go from there.

8            THE COURT:  So it sounds like with respect to Mr.

9    Weitzman's point, he has never gotten a representation that the

10   U.S. Attorney's Office has everything that the SEC has.  It

11   sounds like you're going to be prepared to make that

12   representation soon?

13           MS. GRISWOLD:  Your Honor, certainly with respect to

14   documents, yes.  We have not evaluated beyond that, but

15   certainly with respect to documents, yes.

16           MR. WEITZMAN:  They can't represent they have

17   everything the SEC has.  They can only represent that they have

18   everything that the SEC produced.  The SEC may have in its

19   possession other files that were never produced in response to

20   a different action.

21           So the SEC never represented to us that we have every

22   single document that the SEC has in its possession that may

23   potentially be relevant, responsive, Rule 16, Brady, Giglio for

24   the criminal case.  In fact, they objected to many of the

25   requests for production that we made.  I assume the SEC has

GBLJTUZC                      Conference

1   voluminous additional records that it has not produced and that

2   the government either has, has not obtained or will soon

3   obtain, but it is unclear to me what they're getting:

4           THE COURT:  All right.  It sounds like I am going to

5   need a formal response to defendants' motion to compel Ms.

6   Griswold.  How long do you want to take to do that?

7           And again the response will have to include affidavits

8   discussing the nature of the investigation that was conducted

9   by the SEC and the U.S. Attorney's Office whether those

10   investigations were joint or separate, et cetera.

11           MS. GRISWOLD:  Well, your Honor, I am sorry.  I was

12   just consulting with Mr. Williams because we are not sure how

13   long this comparison will take.  I guess we would request a

14   month at this point.

15           THE COURT:  All right.  Well, today is the 21st of

16   November, so that would bring us to December 21st.  I would

17   hope by that time the computer comparison would have been done

18   because I would like to resolve the discovery issues well

19   before January 31 if that is possible, at least the known

20   discovery issues.  There may be others than the ones that have

21   been raised to date.

22           After the government files its response, the defense

23   counsel, if they feel they need an opportunity to put in a

24   reply, send me a letter and we'll set a date for that.

25           MR. WEITZMAN:  Thank your Honor.

GBLJTUZC                              Conference

1        THE COURT:  I have also received some applications

2    from the defendants about bail issues.  However, I think one of

3    those came in this morning and the other came in late last

4    week.  I want the government to put in a response on both

5    Mr. Amanat and Mr. Tuzman's applications to modify their bail

6    conditions.

7        How long will you need, Ms. Griswold?

8        MS. GRISWOLD:  Your Honor, we would request two weeks

9    from tomorrow, December 6th.  As your Honor said, motions are

10   from both defendants.  There are also separate Pretrial Service

11   Officers we need to consult with.  Given the holiday, we ask

12   for two weeks from tomorrow..

13       THE COURT:  That would bring us to December 6th.

14       I am going to want the responses to conduct a full

15   analysis of the relevant factors under the Bail Reform Act,

16   including the strength of the case and all the other factors

17   that are listed in the Bail Reform Act and I will hold a

18   hearing after I receive the government's filing.  In fact, we

19   can schedule that now.  Mike, how do we look the week of the

20   6th?  Later that week, say the 9th maybe?

21       MR. WEITZMAN:  I apologize.  I don't have my calendar,

22   but I can schedule around your Honor's schedule.

23       (Off-the-record discussion)

24       THE CLERK:  The 10th, at 12:30, is available.

25       THE COURT:  The 9th?  The 10th is a Saturday, at least

1    by my calendar.

2              (Off-the-record discussion)

3              THE CLERK:  The 9th, at 3:00 o'clock, is available,

4    your Honor.

5              THE COURT:  All right.  I am going to schedule bail

6    review hearings for both defendants December 9th, at 3:00

7    o'clock.  If that date and time proves problematic, let me

8    know.

9              MR. WEITZMAN:  My client is a Sabbath observer, and

10   Sabbath starts very early now.

11             THE COURT:  12:30, is there a problem with 12:30?

12             THE CLERK:  12:30 is fine.

13             MR. WEITZMAN:  Thank your Honor.

14             THE COURT:  12:30 on December 9th for bail review.

15             Are there other issues the lawyers want to raise?

16             MR. CREIZMAN:  Your Honor, there are two outstanding

17   bail motions that are less extreme with respect to Mr. Amanat.

18   We are asking, obviously, for the hearing would be removal of

19   his home detention, electronic monitoring conditions.  The

20   other one is the release of the funds, the cash to secure the

21   bond which has been replaced by the pledging of a house in

22   Verona, New Jersey.  We provided proof to the court.  All we

23   need is your Honor's, I don't know, an order or something for

24   his uncle to be able to get that money back.

25             THE COURT:  I thought I had acted on that application.

1  Maybe I am mistaken.  Can the government shed any light on

2  that?

3           MS. GRISWOLD:  We are not sure we saw an order.  There

4  has been a lot of activity in the case.

5           THE COURT:  Does the government object to Mr. Amanat's

6  proposition, which is essentially to substitute the property

7  for the cash?

8           MS. GRISWOLD:  No, your Honor.  We actually signed the

9  relevant paperwork on our end.

10          MR. CREIZMAN:  Your Honor granted it, and I said then

11 I would provide proof of the filing then of the confession of

12 judgment in New Jersey, and then I don't know if there is

13 anything else required for Mr. Amanat's uncle to get the funds

14 back.

15          THE COURT:  That I can't answer.  What I can answer is

16 I thought -- and I guess from what you said, I am right -- that

17 I did act on it.  I approved the application?

18          MR. CREIZMAN:  Yes.

19          THE COURT:  Are you telling me you think you need

20 something else from me with respect to the cash posted as bail?

21          MR. CREIZMAN:  I do.  That is why I filed a motion for

22 release of funds.

23          THE COURT:  When did you file that?

24          MR. CREIZMAN:  The date I filed that was November

25 16th.  It is Docket No. 158.

GBLJTUZC                        Conference

```
 1              THE COURT:  We'll look for that.  I can't swear that
 2   I've acted on that, but we'll look for it as soon as I go
 3   upstairs.
 4              MR. CREIZMAN:  The second request is one made on
 5   October 31st which was filed under seal concerning a request
 6   for Mr. Amanat to able to exercise twice a week or something in
 7   accordance with Pretrial Services.
 8              THE COURT:  That I have not acted on, but I will
 9   either before December 9th or at the December 9th hearing.
10              MR. CREIZMAN:  Thank your Honor.
11              THE COURT:  Anything else?
12              MR. WILLIAMS:  Your Honor, just one point of
13   clarification.  Before your Honor had told defense counsel that
14   they should submit a written response to the government's
15   jurisdictional question as to why Judge Nathan is not the
16   proper court to decide any potential civil discovery dispute as
17   to the forensic agreement between Mr. Maiden and the SEC, and
18   it seems to the government that is a threshold question that
19   needs to be resolved before we get to the joint investigation
20   question in this case.  We just wanted to see what the deadline
21   was for that?
22              THE COURT:  Actually, I don't know that that is true.
23   The Maiden thing is not subsumed totally within the joint
24   investigation issue.  The Maiden issue is a privilege issue.
25              MR. WILLIAMS:  In that regard, Mr. Maiden's counsel
```

GBLJTUZC                    Conference

1    has already submitted a letter to the court saying that the

2    privilege has been waived with regard to any documents produced

3    to the FBI.  So in this case there is no question at this point

4    with regard to the Maiden documents as to whether they are

5    privileged.

6          The issue is with documents that Mr. Maiden and the

7    SEC have withheld from civil discovery because of a privilege

8    dispute.  That is governed by a forensic agreement entered into

9    in connection with the Judge Nathan case.  Just in terms of

10   which court, this is a matter of procedure.

11         THE COURT:  All right.  Well, I do think I need a

12   response from defense to the government's letter of the 17th,

13   yes, it was of the 17th, arguing that at least as to the

14   privilege issue with respect to Maiden, as I said at the outset

15   of the hearing, the government argues that that issue should be

16   resolved by Judge Nathan and not by me, and I would like a

17   response to that.  Is there any reason why defense counsel

18   can't get that in by Monday?

19         MR. WEITZMAN:  I think that should be sufficient.

20         THE COURT:  It is a discrete issue.

21         MR. WEITZMAN:  Discrete and short response for the

22   reasons I have already articulated to the court.

23         THE COURT:  We'll hear from the defense on Monday why

24   the issues regarding the Maiden privilege should not be

25   resolved by Judge Nathan.

GBLJTUZC                    Conference

1        MR. WILLIAMS:  Your Honor, perhaps in the same

2   response they can identify what remains in dispute with regard

3   to discovery that they are seeking from the government because,

4   of course, the joint versus parallel investigation issue only

5   comes before the court if there are documents that are in the

6   SEC's sole possession that the defense wants and the government

7   doesn't have those documents.

8        THE COURT:  It is kind of a chicken or an egg thing.

9   One of the problems I am dealing with is we don't really know

10  what is in dispute.

11       MR. WILLIAMS:  Neither do we, which is why we are

12  trying to focus the defense.  Their motion, of course, was

13  related to entirely Mr. Maiden's documents.  So the government

14  has now produced the FBI computers that we thought mooted the

15  question.

16       THE COURT:  Well, it hasn't.  We just heard it hasn't

17  mooted the question.

18       MR. WILLIAMS:  Exactly, we don't know that.

19       THE COURT:  It is sort of a chicken or an egg thing,

20  okay?  Their point is the U.S. Attorney's Office does not have

21  all the documents the SEC has.  They believe that it is

22  necessary at a minimum for the government to do a Brady-Giglio

23  search of whatever the SEC has.  That is what they're asking

24  for.  The threshold issue as to whether the U.S. Attorney's

25  Office has an obligation to approach the SEC about conducting a

1    review of their documents is whether there was a joint

2    investigation or not.

3              MR. WILLIAMS:  Your Honor, we agree with that.

4              The point we are making is in this case given the fact

5    that Mr. Amanat has not been sued by the SEC, the government

6    has already made the decision to obtain the SEC's documents,

7    make a production to Mr. Amanat, put the two defendants on

8    equal equal footing.

9              THE COURT:  But what counsel has said, defense counsel

10   has said is whatever you get from the SEC presumably is what

11   they have produced in civil discovery to Tuzman, right?  That

12   is what you're going to get.

13             The point they've made is that there is no reason to

14   believe that that is the entire universe of documents the SEC

15   has.  That is their point.

16             MR. WILLIAMS:  If that is their point, the proper way

17   to resolve it is for them to ask the government to consult with

18   the SEC, see whether there are additional documents that the

19   SEC has that they're withholding, and then ask the government

20   to obtain those documents and produce them.  They have made

21   none of those requests.  Instead it appears they want to run

22   through the gateway of the joint parallel investigation

23   question when there may not actually be a need.

24             The government's understanding is those questions

25   arise when the government says we are not going to ask the SEC

GBLJTUZC                         Conference

1    and obtain from the SEC certain materials, and only then the

2    question whether the government has an obligation to do so

3    arises.

4              THE COURT:  When we were last together in September, I

5    requested counsel to have discussions about how to resolve

6    these issues, and we find ourselves on November 21, and those

7    discussions it seems haven't really taken place.  I am all for

8    avoiding motion practice, and it was my hope and my request

9    that the lawyers would talk through these issues themselves so

10   we wouldn't have to have papers filed.

11             MR. WILLIAMS:  We think that is wise and we are

12   prepared to do that.  I think the government's response by

13   indicating to the court we are willing to go and obtain the

14   SEC's production and produce it to Mr. Amanat is a strong

15   signal that we are trying to resolve issues without unnecessary

16   motion practice.  There are plenty of things for us to be

17   consumed with in this case, but it appears they want a fight

18   where a fight might not be necessary.

19             So the government remains committed to have a dialogue

20   with counsel about how we can resolve certain questions, but we

21   did not get a call from either defense lawyer with an

22   indication that this was coming.  No one consulted with us.  No

23   one asked us whether we would oppose, and instead we find

24   ourselves here.

25             MR. WEITZMAN:  I wasn't at the last court conference.

1    The court conference occurred on September 22.  In early

2    September the government found out there are two Maiden

3    computers that were never obtained by the U.S. Attorney's

4    Office and are in the possession of FBI.  They didn't mention

5    that at the court conference, didn't call us to tell us those

6    two Maiden computers would be produced.

7            They knew full well we were going to file this motion.

8    We specifically raised the joint investigation prong of the

9    motion and the Maiden privilege prong of the motion.  If

10   anybody could have avoided this motion practice, it would have

11   been a simple phone call or letter from the government saying,

12   hey, by the way, as to the issues you addressed at the court

13   conference, tell --

14           (Multiple voices)

15           THE COURT:  Let's just cut through it.  It is not

16   about blame or whose fault it is or whatever.  It is about does

17   it make sense for there to be more discussions before more

18   papers are filed, that is the issue.

19           MR. WEITZMAN:  I understand the government doesn't

20   want to file affidavits why there is or is not a joint

21   investigation.  In my experience --

22           THE COURT:  I think what they're saying is it is

23   wasteful to engage in motion practice if there is really not an

24   issue.  What Mr. Williams just said is hey, we've already

25   offered to obtain from the SEC their entire production to

1     Tuzman and turn it over to Amanat.  We have shown good faith.

2     It may be that these issues that defense counsel was raising,

3     they go beyond that, could be resolved just by a simple

4     conversation.  That is what they're saying.

5          I don't know whether they can be or they can't be, but

6     I don't think it is about whether they want to file an

7     affidavit whether it is a joint investigation or not.  I don't

8     think that is any big deal.  They filed such affidavits in the

9     Martoma case, and I ruled on the question.

10         Really the issue raised by what Mr. Williams said is

11    whether it makes sense for there to be more conversations

12    between the lawyers, say, over a week's time to figure out

13    whether there really is something in dispute here or not.

14         MR. WEITZMAN:  I am happy as long as we keep the

15    deadlines and then if we can reach agreement that the issue is

16    moot as to the joint investigation, that is fine.  For the

17    issue to be mooted, what we would need to know, for example,

18    would be that there isn't any document that wasn't produced to

19    the defense that concerns Maiden, Smythe, Tuzman, Amanat or any

20    of these schemes or any of the other witnesses.

21         Just to take it a step further, the SEC presumably has

22    notes from its own interviews from witnesses.  We haven't

23    received any notes from interviews that the SEC conducted of

24    witnesses.  The government argues it has an obligation to

25    review those notes and determine whether there is Brady or

GBLJTUZC                      Conference

1   Giglio material or Rule 16 discovery in those notes.  It is

2   inconceivable to me, in my experience, that the SEC has turned

3   over every single page because they never turn over their

4   notes.  I think that is part of the government's obligation.

5          While the government would not like a finding of a

6   joint investigation, I think it is inevitable that issue is

7   going to have to be teed-up for your Honor for a ruling one way

8   or another.

9          MR. WILLIAMS:  Your Honor, we don't need to belabor

10  the point.  Again the government is showing good faith.  We say

11  say to the SEC to our knowledge conducted two interviews on

12  their own in which they took notes, and the government

13  certainly is happy to take a look at those interview notes for

14  Brady and Giglio.  It is not an issue, so that point on that

15  issue is moot.

16         If there are other points, the government is happy to

17  discuss.  There is no harm in having dialogue and avoiding

18  waste of time.  Everyone here is busy.

19         THE COURT:  The lawyers will take a week.  They will

20  take until next Monday to discuss these issues and figure out

21  whether there is an active dispute or not and we'll produce

22  from there.

23         MR. CREIZMAN:  From our perspective, from Mr. Amanat's

24  perspective, I actually recognize today that our part of the

25  motion is mostly mooted except for certain items that we

1   identified in our letter from Maiden's computers which I invite

2   the government to have a discussion with me about.

3           THE COURT:  That will take place over the next week.

4   If you remain dissatisfied, you'll let me know and it will have

5   to be resolved.

6           MR. WEITZMAN:  Does your Honor still want us to

7   address the jurisdictional issue?

8           THE COURT:  I am holding it in abeyance because the

9   conversations I wanted to have happen sometime over the past

10  seven or eight weeks did not.  It is my hope it will happen

11  over the next week and we can have a clear understanding what

12  is in dispute or not.  I am holding that in abeyance, Mr.

13  Weitzman.  Send me a joint letter or separate letters if you

14  can't agree on a joint letter as to what the remaining issues

15  are and what would be appropriate in terms of briefing of

16  whatever issues remain.

17          MR. WEITZMAN:  Thank your Honor.

18          THE COURT:  Anything else?

19          MR. WILLIAMS:  Your Honor, has time been excluded

20  until trial in this case?  I am sorry.  I don't have my notes

21  from the prior conference.

22          THE COURT:  I don't think I would have done an

23  exclusion through the trial date.

24          MR. WILLIAMS:  If there is no exclusion, we move to

25  exclude time between today and the date of the bail hearing on

1    December 6th, your Honor.

2              THE COURT:  December 9th, actually.

3              MR. BEYS:  No objection.

4              MR. CREIZMAN:  No objection.

5              THE COURT:  I will exclude time between today and

6    December 9th under the Speedy Trial Act pursuant to Title 18,

7    United States Code, Section 3161 (h)(7)(A) to permit defense

8    counsel to continue reviewing the discovery materials and

9    determine what pretrial motions will be filed.  I do find that

10   the ends of justice served by the granting of this continuance

11   outweigh the best interests of the public and the defendants in

12   a speedy trial.

13             (Court adjourned)

14

15

16

17

18

19

20

21

22

23

24

25