UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA          :
                                  :
          -v.-                    :          S8 15 Cr. 536 (PGG)
                                  :
KALEIL ISAZA TUZMAN and           :
OMAR AMANAT,                      :
                                  :
               Defendants.        :
------------------------------------------------------x


### GOVERNMENT'S MEMORANDUM OF LAW IN OPPPOSITION TO DEFENDANT ISAZA TUZMAN'S MOTION TO SUPPRESS OR FOR A <u>CONTINUANCE OF TRIAL</u>


                                        JOON H. KIM
                                        Acting United States Attorney
                                        Southern District of New York
                                        One St. Andrews Plaza
                                        New York, New York 10007


Damian Williams
Andrea M. Griswold
Joshua A. Naftalis
Assistant United States Attorneys
     - Of Counsel -

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................. 2

STATEMENT OF FACTS .................................................................................................... 3

APPLICABLE LAW .......................................................................................................... 10

ARGUMENT ...................................................................................................................... 12

    Suppression is Unwarranted Because the Government Complied With Rule 16 .......... 12

    A Further Continuance of Trial is Not Warranted ........................................................ 18

CONCLUSION................................................................................................................... 21

## TABLE OF AUTHORITIES

### Federal Cases

*SEC* v. *Kaleil Isaza Tuzman*, 15 Civ. 7057 (AJN) .......................................................... 6

*United States* v. *Davis*, 244 F.3d 666 (8th Cir. 2001)................................................. 15, 16, 17

*United States* v. *Espinal*, 96 F. Supp.3d 53 (S.D.N.Y. 2015) ........................................ 20

*United States* v. *Euceda-Hernandez*, 768 F.2d 1307 (11th Cir. 1985) .......................... 11

*United States* v. *Feng Ling Liu et al.*, 12 Cr. 934 (RA) .............................................. 17, 18

*United States* v. *Giraldo*, 822 F.2d 205 (2d Cir. 1987)............................................... 11

*United States* v. *Graham*, 99 Cr. 271 (CFD) .............................................................. 12

*United States* v. *Healey*, 860 F. Supp. 2d 262 (S.D.N.Y. 2012) ...................... 11, 12, 13

*United States* v. *Marshall*, 132 F.3d 63 (D.C. Cir. 1998) ........................................... 11

*United States* v. *Matthews*, 20 F.3d 538 (2d Cir. 1994)........................................... 11, 13

*United States* v. *McClain*, 2017 WL 3710806 (W.D.Ky. Aug. 28, 2017) ................... 15, 16, 17

*United States* v. *Pineros*, 532 F.2d 868 (2d Cir. 1976) ............................................... 11

*United States* v. *Stevens*, 985 F.2d 1175 (2d Cir. 1993) .............................................. 11

*United States* v. *Thai*, 29 F.3d 785 (2d Cir. 1994)..................................................... 11, 12

*United States* v. *Tomasetta*, 2012 WL 896152 (S.D.N.Y. Mar. 16, 2012) ................... 20

### Federal Regulations

Fed. R. Crim P. 16(d)(2). ................................................................................................ 11

Fed. R. Crim. P. 16(a)(1)(E) ........................................................................................... 10

## PRELIMINARY STATEMENT

The Government respectfully submits this response to defendant Kaleil Isaza Tuzman's motion to suppress the contents of a laptop belonging to Robin Smyth (the "Smyth Laptop") and, in the alternative, for a one-month continuance of the October 16, 2017 trial date.  The defendant's motion exaggerates the facts in order to obtain a windfall remedy the law does not permit.

On July 20, 2016, the Government fulfilled its obligations under Rule 16 of the Federal Rules of Criminal Procedure when it produced the invoice for the Smyth Laptop, called the defendant's attention to that and similar invoices in a cover letter and index, and invited the defendant to inspect the material.  The Government went well beyond its Rule 16 obligations nearly a year later when, on July 5, 2017, having not received a request from defense counsel to inspect or copy the Smyth Laptop, it proactively and in good faith followed up and asked defense counsel (five in all from Gibson Dunn) whether they wanted to examine or obtain a full forensic copy of the Smyth Laptop.   None of the five attorneys responded.

Rule 16 demands no more, and indeed requires much less, from the Government.  For those reasons alone, the defendant has no plausible claim to suppression of evidence that, but for his admitted failure to read and respond to the Government's correspondence, he would have long ago possessed.  Defense counsel's continued attempt to transform the Government's good faith efforts into bad faith misconduct is strained at best.

The Government also respectfully submits that this case, which was originally scheduled for trial on October 2, 2017, should proceed on October 16, 2017, the new date the Court set after granting the defendant's original adjournment request.  By the time trial begins, the defendant will have had more than seven weeks with the materials from the Smyth Laptop, including the Government's marked exhibits from the Smyth Laptop.  The additional delay the defendant

requests – which will thrust the trial into both the Thanksgiving and the December holidays – is unwarranted under the circumstances.

The motion should be denied.

## STATEMENT OF FACTS

In preparation for meeting its Rule 16 discovery obligations in this case, the Government gathered and organized its discovery. As part of this process, the Government communicated with case agents from the Federal Bureau of Investigation ("FBI") and the United States Postal Inspection Service ("USPIS") to ensure that the U.S. Attorney's Office was in possession of all evidence vouchers, which are produced for the express purpose of putting a defendant on notice of physical evidence. The Government collected and bates stamped seven pages of evidence vouchers from the FBI and USPIS, including evidence vouchers for computers belonging to cooperating witnesses Stephen Maiden and Robin Smyth. The following voucher identified a Mac laptop belonging to Robin Smyth:



**Barcode:** IS0000587924

**Case Number:** 2005119-MF

**Aquired Date:** 1/19/2016

**Recovered By:** FBI Assistant Legal Attache David Crisafi and Postal Inspector Melissa Atkin

**Recovered From:** Walker, Grant

**Recovered Address:** Level 33 140 William Street Melbourne VIC Australia 3000

**Responsible Party:** USPIS\MSATKIN

**Description:** Robin Smyth's Apple Mac laptop Model A1369, Serial Number C02FW1R8DJDK. Laptop was in the possession of FBI ALAT D. Crisafi and secured from January 19, 2016 until the following morning, January 20, 2016, when Inspector Atkin took possession of the laptop.

On July 20, 2016, the Government made its first Rule 16 production.  The seven pages of vouchers, including the vouchers for the Maiden and Smyth computers, were part of this initial production.  Because of the large volume of materials, the cover letter to the Government's initial production included a detailed index listing categories of discovery and corresponding Bates ranges to aid the defendant's review of discovery.  (*See* Ex. A.)  The cover letter and index clearly disclosed that the Government had produced evidence vouchers as follows:

| | |
|---|---|
| **FBI-USPIS**<br>FBI Evidence Vouchers (2)<br>**USAO_TUZMAN_0033469-0033470**<br>Postal Document<br>**USAO_TUZMAN_0033471-0033475** | USAO_TUZMAN_0033469-0033475 |

The Government's July 20, 2016 production was made on a hard drive.  In order to facilitate the defendant's review of the discovery, the Government organized the documents on the hard drive into 24 folders that corresponded approximately to the categories listed on the index in the cover letter as reflected in this screen shot:[1]

---

[1] The folders "SEC Productions" and "Subpoena Results" each contained a large volume of the discovery produced by various different custodians.  Each of these folders contained sub-folders generally organized by the producing custodian.  The cover letter indicates these separate sub-folders.



One of these 24 folders was labeled "FBI-USPIS":



This folder contained three documents totaling seven pages.  One of the three documents was labeled "KITDigital Evidence-Postal doc."



The first page of "KITDigital Evidence-Postal doc" document was the USPIS voucher for the Smyth Laptop.  The voucher indicated that the Smyth Laptop had been vouchered by the case agent based in New York.  The two FBI documents in this folder were vouchers for Maiden's computer and iPhone, respectively, and indicated that these items were being held in Charlotte,

North Carolina where they had been vouchered by FBI agents in the Western District of North

Carolina ("WDNC"), in connection with Maiden's case in that district.

Finally, the July 20, 2016 cover letter invited the defendant to inspect any of the evidence

listed in the seven pages of invoices:

> If you wish to inspect any of the evidence listed on the evidence
> invoices, please let me know and I will make arrangements for you
> to do so.

(Ex. A at 9.)

In connection with ensuring that the Government had identified and disclosed all Rule 16

materials, the Government had numerous conversations with attorneys with the Securities and

Exchange Commission responsible for the parallel civil action, *SEC* v. *Kaleil Isaza Tuzman*, 15

Civ. 7057 (AJN).  In one of these conversations, in or about the summer of 2016, the Government

learned that Maiden had produced at least one computer to the SEC, in or about 2014, the contents

of which the SEC had produced to the defendant in the parallel SEC action.  Thereafter, the

Government, through the FBI, contacted the Western District of North Carolina to ensure that all

evidence from Maiden's WDNC case was transferred to New York and to inquire about the

Maiden computer.  As a result of conversations with the FBI and SEC, as well as reviewing the

FBI vouchers which indicated that the FBI had vouchered Maiden's computer in 2013, the

Government came to understand that Maiden had produced the same computer twice – once in

2013 to the FBI and once in 2014 to the SEC.[2]  The Government further learned that while

Maiden's production to the SEC was made pursuant to an understanding that certain documents

---

[2] There are two Maiden computers that were vouchered together – a laptop and a desktop. The contents of both were loaded onto the hard drive provided by defense counsel in November 2016.   Both were produced to the SEC in 2014.

would be treated as privileged, the production to the FBI was not.  In light of these unique privilege issues, in November 2016, the Government elected to request hard drives from counsel and produce the version of Maiden's computer that he had previously produced to the FBI.  Throughout this time, the Smyth Laptop remained in evidence with USPIS.

Between July 2016 and June 2017, defense counsel contacted the Government periodically with questions regarding the discovery, or to request to inspect certain items listed on the evidence vouchers, including the Smyth notebooks, which were held at USPIS.  Each time, the Government responded to the defendant's request.  On one occasion, in June 2017, defense counsel contacted the Government about an extraction report for an iPhone belonging to Maiden.  A voucher for that iPhone extraction report was listed on the July 20, 2016 invoices.  Defense counsel requested an image of the iPhone itself.  In accommodating this request, the Government considered that the defendant had never requested to inspect or asked for a copy of the Smyth Laptop, despite having requested to inspect other items contained in the July 20, 2016 invoices.  Accordingly, to ensure that defense counsel had not overlooked the voucher naming the Smyth Laptop, the Government affirmatively reached out to defense counsel and sent the following email on July 5, 2017 (the "July 5 Email") to *five* lawyers at Gibson Dunn:

| From: | Griswold, Andrea (USANYS) |
|---|---|
| To: | "Weitzman, Avi" |
| Cc: | Kuhn, Alyssa B.; Crowley-Buck, David F.; Pyun, Sarah (USANYS) [Contractor]; Sherman, Dana E.; McRae, Marcellus; Williams, Damian (USANYS) 6; Naftalis, Joshua (USANYS) |
| Subject: | RE: KIT - Missing recordings |
| Date: | Wednesday, July 05, 2017 10:34:00 AM |
| Attachments: | KITDigital Evidence-Postal.doc.pdf |

Avi,

      Thank you for following up on this.  The phone was imaged on a single DVD maintained by FBI.  We are having a copy made and will produce it to you this week, as soon as we receive it.  Relatedly, as you know, our July 20, 2016 production contained certain evidence vouchers, including USAO_Tuzman 003471 (attached for reference), which references Mr. Smyth's laptop.  The cover letter accompanying this production advised you to let us know if you wanted to inspect any of the evidence listed on the evidence invoices.  Do you intend to make a request to examine the laptop?  Alternatively, if you would like a duplicate copy of the computer image, let us know and we'll find out how large a hard drive we need you to provide.

Regards,
Andrea

(Ex. B.)

      The majority of the text (highlighted in yellow above) focused on the Smyth Laptop.   To avoid any confusion, the Government again attached the voucher naming the Smyth Laptop.  The Government inquired directly of defense counsel if he "intend[ed] to make a request to examine the laptop" or "[a]lternatively, . . . would like a duplicate copy of the computer image, let us know and we'll find out how large a hard drive we need you to provide."  None of the five lawyers on the Government's July 5, 2017 email responded to this explicit invitation to inspect the computer or obtain a copy of the Smyth Laptop.

      Seven weeks *after* the Government had made this affirmative effort to ensure the defendant had focused on this piece of physical evidence, defense counsel accused the Government of violating its Rule 16 obligations, referring to the July 5 email as "obliquely referencing the Smyth laptop," and suggesting that "a fair reading of this email suggests that the government had already produced to Mr. Isaza Tuzman a copy of the Smyth laptop — hence the offering of a duplicate copy."

Although the Government strongly disagreed with defense counsel's accusations, the Government focused on taking immediate steps to ensure that the defendant had access to the contents of the Smyth Laptop.

- *First*, the Government offered to provide the defendant with a copy of the PST files containing the emails from the Smyth laptop so the defendant could immediately begin reviewing Smyth's emails in an electronically searchable format.   At the Government's request, the USPIS Postal Inspector assigned to this case focused her attention on ensuring that such PSTs could be loaded to a hard drive provided by the defendant and returned to defense counsel by Federal Express within a day, which they were, on August 25, 2017.

- *Second*, the Government requested that the USPIS expedite the process of loading a forensic image of the Smyth Laptop onto a hard drive for defense counsel.  Two copies of the hard drive were provided to the defendant on September 1, 2017.

- *Third*, on August 31, 2017, the Government voluntarily made an early production of the marked exhibits it intends to introduce from the Smyth Laptop.  Smyth's 3500 material as well as the Government's broader exhibit list and 3500 were also provided to the defendant on September 2, 2017.

Providing Smyth's emails in PST format segregated the emails into separate accounts (KIT digital, Roo Group, Gmail), allowing for electronic searching of each account, including by date. Indeed, while the Government did not itself have access to such PSTs until August 18, 2017, when the USPIS created them at the Government's request,[3] the PST format allowed the Government to focus its review on those of Smyth's email accounts that Smyth used during his tenure at KIT digital.  In particular, the Government focused on Smyth's Gmail account, which he frequently used to communicate concerning the crimes alleged in the Indictment.  Indeed, the majority of the exhibits the Government has marked from the Smyth Laptop were culled from this Gmail account,

---

[3] Prior to August 18, 2017, the emails on the Smyth Laptop (which is a Mac device) were fragmented and largely unreadable on the Government's PC computers. Conversion to PST format remedied that problem.

from this time period.  The Gmail account contains less than 1GB of data (or approximately 10,000 emails), which includes a significant amount of easily identifiable spam, as well as personal emails. As a result, between August 18, 2017 and August 31, 2017, one attorney from the Government was alone able to identify and mark all of the emails that it intends to introduce from the Smyth Laptop at trial, the vast majority of which come from the Gmail account.  Of the remaining email accounts, several of these accounts pre-date Smyth's tenure at KIT digital or include KIT digital emails produced to the defendant more than a year ago on July 20, 2016.  Other emails on the Smyth Laptop include, for instance, KIT digital emails that were not responsive to the investigatory subpoenas issued in this case and are therefore likely irrelevant to the charged accounting fraud scheme.

By September 5, 2017, within five days of receiving a copy of the Smyth Laptop, the defendant's vendor had successfully processed the laptop, allowing the defendant to access its contents (including non-email documents) in an electronic, searchable database.  (*See* Sept. 5, 2017 Def. Ltr. at 1.)  In that same time period, the defendant was able to run various electronic searches to assist in targeting materials for review, including searches that identified (and likely segregated) 74,512 emails that include the defendant and 63,468 that include Gavin Campion, another cooperating witness.  (*Id.* at 3.)

## APPLICABLE LAW

Federal Rule of Criminal Procedure 16 requires the Government to permit the defense, upon request, "to inspect and to copy or photograph" any "books, papers, documents, data, photographs, [or] tangible objects" in the Government's possession, custody or control, that are "material to preparing the defense" or if the "Government intends to use the item in its case-in-chief" or if "the item was obtained from or belongs to the defendant."  Fed. R. Crim. P. 16(a)(1)(E)

(i)-(iii).   Importantly, while "[i]t is common practice for the Government to *produce* to defendants copies of Rule 16 material, either in digital or paper form, . . . it is not required by the terms of the rule.  Rather, Rule 16 requires that the Government *disclose* the material and make it available for inspection, copying, or photographing."  *United States* v. *Healey*, 860 F. Supp. 2d 262, 269 (S.D.N.Y. 2012) (emphasis added); *United States* v. *Matthews*, 20 F.3d 538, 550 (2d Cir. 1994) (describing the Government's "duty of disclosure" as being the touchstone of Rule 16).

Rule 16 provides a number of possible remedies for a failure to comply with its requirements, including ordering the production of the materials at issue; granting of a continuance; prohibiting introduction of the undisclosed evidence; or the entry of "any other order that is just under the circumstances."  Rule 16(d)(2).  A "trial court has broad discretion to fashion a remedy for the government's violation of its Rule 16 obligations."  *United States* v. *Thai*, 29 F.3d 785, 804 (2d Cir. 1994).  "The district court's admission of evidence following a violation of Rule 16(a) is not an abuse of discretion . . . unless the violation caused the defendant substantial prejudice."  *Id.*; *see Matthews*, 20 F.3d at 550  This is particularly so where the Government's discovery failure was inadvertent.  *See United States* v. *Stevens*, 985 F.2d 1175, 1181 (2d Cir. 1993) (court examines, *inter alia*, "the reason for its nonproduction").

Preclusion of evidence is rarely an appropriate sanction for a discovery delay.  Rather, a continuance is the preferred remedy, "because it gives the defense time to alleviate any prejudice it may have suffered from the late disclosure."  *United States* v. *Marshall*, 132 F.3d 63, 69 (D.C. Cir. 1998) (citing *United States* v. *Euceda-Hernandez*, 768 F.2d 1307, 1312 (11th Cir. 1985)); *see United States* v. *Giraldo*, 822 F.2d 205, 212 (2d Cir. 1987) ("a court may allow previously undisclosed tapes to be introduced after a delay of a few days to permit counsel in the interim to inspect them and fashion a challenge to them"); *United States* v. *Pineros*, 532 F.2d 868, 871 (2d

Cir. 1976) (the court should consider, *inter alia*, "'the feasibility of rectifying [any] prejudice by a continuance'" (quoting Advisory Committee Notes on Rule 16(g)). "A continuance is the least severe remedy necessary to preserve the defendant's right to a fair trial, promote the fair and efficient administration of justice, and ensure full compliance with Rule 16(a)." *United States* v. *Graham*, No. 99 Cr. 271 (CFD), 2000 WL 1902425, at *2 (D. Conn. Dec. 21, 2000).

**ARGUMENT**

**<u>Suppression is Unwarranted Because the Government Complied With Rule 16</u>**

The defendant's motion to suppress fails at the outset because the Government did not violate Rule 16. *See, e.g.*, *Thai*, 29 F.3d 804 (noting the trial court's broad discretion to "fashion a remedy for the government's *violation* of the Rule" (emphasis added)). As detailed above, the Government has consistently met its Rule 16 obligations – first by making the Smyth Laptop available for inspection on July 20, 2016 and, second, by reminding defense counsel about the Smyth Laptop on July 5, 2017 and explicitly asking whether defense counsel wanted "to examine the laptop" or, alternatively, whether defense counsel wanted a "duplicate copy of the computer image." The Government's second step – reminding defense counsel that our prior invitation to inspect the Smyth Laptop had gone without a response and prompting him to follow up – is precisely the kind of good faith step that Courts in this District commonly expect from the Government, even when the rules do not require it. Accordingly, suppression must be denied.

In fact, after exhaustive research, the Government has not identified any case, in any district, in which a court found that the Government had violated Rule 16 by disclosing evidence and making it available to a defendant. That is hardly a surprise, given that the text of Rule 16 clearly establishes that the Government satisfies its discovery obligations when it "permit[s] the defendant to inspect and to copy [materials] if the item is within the government's possession,

custody, or control." Rule 16(a)(1)(E). Indeed, the case that is most instructive is *United States* v. *Healey*, a case from this District, in which a defendant (charged with child pornography offenses) claimed that the Government violated Rule 16 by disclosing a computer in a discovery cover letter – and providing a voucher for the computer – but not producing the computer's contents, which included content that was not child pornography. Like the defendant here, the defendant in *Healey* argued that Rule 16 required the Government to produce the contents of the computer that did not contain child pornography, not simply make the computer available for inspection. Judge Scheindlin rejected this argument. She explained that while it was "common practice" for the Government to produce copies of Rule 16 materials, that practice "is not required by the terms of the rule. Rather, Rule 16 requires that the Government disclose the material and make it available for inspection, copying, or photographing. Therefore, Healey's repetitious claim that '[p]ursuant to Rule 16, the Government was required to produce this data to the defense,' is incorrect." *Healey*, 860 F.Supp.2d at 269. In a footnote, Judge Scheindlin admonished defense counsel for advancing the same legally-unsupported argument that defense counsel for Isaza Tuzman raises here: "Defense counsel misrepresents not only Rule 16, but the cases interpreting it. *See United States* v. *Matthews*, 20 F.3d 538, 550 (2d Cir. 1994) (holding that a love letter should have been *disclosed* to the defendant, not *produced* to him)." *Id*. at n.31 (emphasis in original).

Indeed, the manner in which defense counsel has discharged his own discovery obligations demonstrates that he fully understands that Rule 16 requires no more than making material available for inspection and copying. On September 12, 2017, after the Government requested that the defendant produce Rule 16 materials that he had produced to the SEC (but not the Government) more than a month ago, defense counsel told the Government that he would only make his reciprocal Rule 16 discovery "available to the government to copy ***at the government's***

***expense***, pursuant to Fed. R. Cr. P. 16(b)(1)(A)." (Ex. C (emphasis in original).)  Remarkably, defense counsel then sent the Government a $11,358.39 invoice that the Government would have to pay Gibson Dunn's vendor if the Government wanted to receive a production of the defendant's Rule 16 material.  It read:

| Date of Production to SEC | Contents of Production | Estimated Cost of Production |
|---|---|---|
| 14-Aug-17 | Electronic document from Allen & Co. | $ 1,561.45 |
| 15-Aug-17 | Electronic documents from American Express and Grant Thornton | $ 3,775.67 |
| 16-Aug-17 | Electronic documents from Greenberg Traurig | $ 4,243.51 |
| 16-Aug-17 | 27 boxes of hard-copy documents from Greenberg Traurig | *(SEC made its own arrangements to photocopy these materials from its vendor Ricoh)* |
| 21-Aug-17 | Electronic documents from Moore Stevens and Neulion | $ 1,777.76 |

Please note that for the boxes of documents received from Greenberg Traurig, they are being stored at Gibson Dunn and you may inspect the documents at our offices if you prefer instead of photocopying the documents at considerable expense.

Please let us know how you would like to proceed.  As stated above, the costs of ordering these materials will have to be borne by the government, and so long as the government arranges to make such payments, we are making the documents available to the government for copying.

Lacking textual support in Rule 16 and legal authority interpreting the rule in the manner he suggests, and unable to point to his own Rule 16 practice as a model to emulate, the defendant instead offers up a "common sense" argument that the Government violated Rule 16.  Specifically, the defendant argues that the Government must "use unambiguous language" when it has previously satisfied its Rule 16 obligations "via production rather than inspection." (Def. Mem. at 14).  The implication is that the Government somehow tricked defense counsel into believing that the Government had produced all materials, including all physical evidence.  Even if the defendant's proffered standard were the law (and it is not), the Government's clear correspondence would easily satisfy it.  (*See* Ex. A: "If you wish to *inspect* any of the evidence listed on the evidence invoices, please let me know and I will make arrangements for you to do so."; Ex. B: "The cover letter accompanying [the July 20, 2016 production] advised you to let us know if you

wanted to *inspect* any of the evidence listed on the evidence invoices.  Do you intend to make a request to examine the laptop?  Alternatively, if you would like a duplicate copy of the computer image, let us know and we'll find out how large a hard drive we need you to provide.").  As explained above, even a basic scan of the Government's July 20, 2016 discovery cover letter, which pointed to the physical evidence in the Government's possession, should have prompted defense counsel to look at the discrete category of invoices, seven pages in all, for the physical evidence the Government was inviting him to "inspect."  And, had defense counsel read the Government's July 5, 2017 email, the majority of which was dedicated to the Smyth Laptop, he would have seen that the Government was using unambiguous language and simple sentences – "Do you intend to make a request to examine the laptop?" – to alert defense counsel, not to trick him.[4]  Defense counsel's characterization of the July 5 email as "mere wordplay" (Def. Mem. at 20) simply reflects how far his argument stretches the facts in order to achieve an unwarranted result.[5]

---

[4] Defense counsel spends much time arguing that the Government's other communications, in which it accurately stated that it had complied with its Rule 16 obligations, were part of this trickery. (*See, e.g.*, Def. Mem. at 16 (accusing the Government of making a false statement by declaring its compliance with Rule 16). This argument is baseless because, as explained above, the Government was in compliance with Rule 16 at all times.

[5] Defense counsel's proffered response to the July 5 email makes little sense. *First*, defense counsel insists that he received the July 5 email, read the first three sentences, and then stopped on a dime, skipping the rest.  Even if the Court credits that explanation, it begs the obvious question whether the other four Gibson Dunn attorneys similarly failed to read the remainder of the July 5 email.  Defense counsel does not say, presumably because it is improbable that such a large group of diligent attorneys would similarly ignore their correspondence.  *Second*, defense counsel insists that had he read the July 5 email, it would not have alerted him to the Smyth Laptop because it used the words "duplicate copy."  He claims that "duplicate copy" suggested that a prior copy had been provided.  (Def. Mem. at 20.)  That is not by any means a natural reaction to the email.  Parties in criminal cases do not, as a matter of practice, offer to *reproduce* discovery unless there is an issue with the *original* production.  Most attorneys would read the Government's email and conclude that they did not have the Smyth Laptop.  And, even if one were under the misimpression that the Smyth Laptop had been produced, the natural response would be to ask the Government *why* it was offering to produce something twice and whether there was an issue with the original production.

Furthermore, if there were any doubt about the Government's conduct, the two principle cases cited by the defendant, *United States* v. *Davis*, 244 F.3d 666 (8th Cir. 2001), and *United States* v. *McClain*, 2017 WL 3710806 (W.D.Ky. Aug. 28, 2017), underscore that suppression is an inappropriate remedy.  In *Davis*, the Government violated a court-imposed discovery deadline by more than 30 days and produced incriminating DNA evidence the Friday before a robbery trial was set to begin.  The district court suppressed the DNA evidence as a discovery sanction, and the Eighth Circuit affirmed.  *See Davis*, 244 F.3d at 671.  The *Davis* court concluded that the Government had acted in reckless disregard for the discovery deadline and offered no explanation to the court for its inability to abide by that deadline.  *See id.*  In *McClain*, the Government, in violation of a court-imposed discovery deadline, turned over 125 videos from a home surveillance system the day before a drug trial was supposed to begin and then produced voluminous phone records obtained via a search warrant on the morning trial commenced.  The district court held that the Government had violated Rule 16 by breaching the court-imposed deadlines and ordered the evidence suppressed.  *McClain*, 2017 WL 3710806 at *2.

This case bears no resemblance to *Davis* or *McClain*.  Unlike *Davis*, where the disclosure of evidence took place three days before trial, and *McClain*, where the disclosures took place one day before trial and on the morning of trial, the Government disclosed the existence of the Smyth Laptop on July 20, 2016, which is 453 days before trial, and followed up with a reminder to defense counsel on July 5, 2017, which is 103 days before trial.  The defendant himself acknowledges he was aware of the Smyth laptop by virtue of the Government's letter dated August 21, 2017, still 56 days before trial. And, unlike *Davis* and *McClain*, where the Government inexplicably violated court-imposed discovery deadlines, the Government has not violated any such deadline in this case.  The defendant casually dismisses the obvious mismatch between the eve-of-trial disclosures

in *Davis* and *McClain* and the disclosure in this case as a "distinction without a difference." (Def. Mem. at 24.)  But that ignores the clear weight that both the *Davis* and *McClain* courts placed on the late timing of the disclosures in holding that suppression was warranted.  *See, e.g.*, *McClain*, 2017 WL 3710806, at *3 ("The Court finds that Rule 16 has been violated by these *late disclosures*, *since these disclosures should have been made in accordance with the Court's deadlines*." (emphasis added).); *Davis*, 244 F.3d at 671 ("The government not only produced the DNA evidence *a month late*, but it did so almost literally *on the eve of trial*" (emphasis added).).  Indeed, had the Government in *Davis* and *McClain* disclosed the evidence 453 days before trial – with an explicit reminder to defense counsel 103 days before trial – there is no doubt that suppression would not have been ordered.

In contrast to the cases cited by the defendant, Judge Abrams' denial of a motion to preclude in *United States* v. *Feng Ling Liu et al.*, 12 Cr. 934 (RA), is instructive because, among other reasons, it involved defense counsel's failure to inspect material that had been disclosed. There, the Government had disclosed 27 boxes of material, produced a subset of those materials, and made the remainder of the 27 boxes available for review.  None of the defendants inspected the 27 boxes of material.  After defense opening statements, the Government sought to introduce additional exhibits from the 27 boxes – exhibits that consisted of documents previously made available for inspection but *not* previously produced.  The defendants accused the Government of violating Rule 16 and moved to preclude the additional exhibits.  In denying the motion, and without delaying the trial, Judge Abrams focused on the fact that the materials had been made available to the defendants:

> *They've disclosed this*.  If you ask that this witness who they're going to introduce this document through be put on at a later date, I'll absolutely entertain that request to give you time to review this. *But it has been available to you*.  They've given it to you in time to

utilize it for cross-examination. I'm going to give you more time if
you want this witness to testify later, but the motion or request to
exclude the document is denied.

(Mar, 24, 2014 Tr. at 285-86, attached hereto as Exhibit D (emphasis added).)[6]

Here, the Government has gone well beyond *Feng Ling Liu* by producing the exhibits it
intends to introduce from the Smyth Laptop, as well as Smyth's 3500 material, well before the
trial is scheduled to begin and providing the defendant with PSTs of the email inboxes to facilitate
electronic review.

The defendant no doubt would like to suppress the Smyth Laptop. But the law, and the
unambiguous record of the Government's good faith efforts to alert defense counsel to the Smyth
Laptop, do not support that outcome. Accordingly, the motion to suppress should be denied.

## A Further Continuance of Trial is Not Warranted

Even if there had been a Rule 16 deficiency arising from the Government's initial
disclosure of the laptop – which there was not – it was cured by the Government's July 5, 2017
email. By the time the trial begins, nearly three and a half months will have passed since the
Government's July 5 email. More importantly, by October 16, 2017, the defendant will have had
access to the materials on the Smyth Laptop, as well as the marked exhibits from the Smyth Laptop
and Smyth's 3500 material, for more than seven weeks. No further adjournment is necessary to
ensure the defendant, armed with considerable defense resources, has an adequate opportunity to
review the laptop's contents.

While the defendant estimates that it will take "257 reviewer days" to complete a review
of every single email on the Smyth Laptop, the defendant, represented by at least eight attorneys

---

[6] Ultimately, the Government agreed to call the witness through whom the additional exhibits
were to be introduced *a few days* later in the trial to allow the defendant to review the
additionally marked exhibits.

in the criminal case, has access to the materials in an electronically searchable format, which will allow a far more targeted review of the laptop's contents.  In fact, in defending his failure to conduct even a cursory review of the seven pages of evidence vouchers, defense counsel asserts that "engaging in a document-by document review of such a voluminous government production would quickly burn through the available budget well before trial."  (Def. Mem. at 6.)  As a result, the defendant argues, "the modern-day realities of ESI document review . . . [mean that] counsel must use word searches to separate the wheat from the chaff."  (*Id.* at 18.)  Even a passing review of the PSTs of email accounts contained on Smyth's computer demonstrates that there is significant "chaff" on the Smyth Laptop, including a substantial number of spam emails in the Gmail account from clearly irrelevant sources, such as "AwesomePennyStocks.com," "VacationsToGo.com," and "PGA.com."  Now that the contents of the entire laptop have been processed and are available to the defendant electronically, the defendant can use search terms and similar tools to identify relevant documents.  As the defendant explained:

> Applying search terms to cull irrelevant documents from a production is a common and accepted practice where the discovery is as voluminous as the government's production here.  *See generally* The Sedona Conference, *Commentary on Defense of Process: Principles and Guidelines for Developing and Implementing a Sound E-Discovery Process* 25 (Sept. 2016) ("Perhaps the most common method used to cull data from review and production is the use of search terms.").

(Def. Mem. at 5-6.)

In fact, recognizing that such processes can be applied to the Smyth Laptop, the defendant has already run numerous electronic searches, including those to identify (and likely, segregate for review) the approximately 74,512 emails that include the defendant and the 63,468 that include Gavin Campion.  (Def. Sept. 5 Ltr. at 3.)

The two cases cited by the defendant in support of an additional adjournment involved disclosures made days – not weeks or months – before trial.  In *United States* v. *Espinal*, 96 F. Supp.3d 53, 61 (S.D.N.Y. 2015), Judge Chin granted a one-month adjournment after the defendant learned of a computer disk containing voluminous telephone calls and line sheets nine *days* before trial.  Likewise, in *United States* v. *Tomasetta*, 2012 WL 896152, at *1 (S.D.N.Y. Mar. 16, 2012), Judge Crotty granted a two-month adjournment after 43 boxes of documents – none of which were electronically searchable – were produced on the *eve of trial*.  The defendant provides no precedent for his assertion that an additional adjournment is warranted where even the defendant's characterization of the facts reflect that the contents of the Smyth Laptop were accessible in electronically searchable format seven weeks before trial.

As discussed above, the defendant attempts to argue around the lack of support for his adjournment request by asserting that the timing of the disclosure is "a distinction without a difference."  That is nonsense.  The whole point of an adjournment in this context is to provide the defendant with *time* to review materials if they were not disclosed sufficiently in advance of trial. Here, there is no question that by the opening of the evidence in this case on October 16, 2017, the defendant will have had – for a period of seven weeks – access to the contents of the Smyth Laptop. By September 5, 2017, the defendant's document vendor had already processed the data and completed targeted electronic searches to cull the data and identify those emails between Smyth and Tuzman and between Smyth and Campion. The defendant's vendor and team of a least eight lawyers (in the criminal matter alone) will be able to consult the Government's exhibits and Smyth's 3500 material as they continue their electronic review of the contents of the Smyth Laptop over the course of the next month.   Any further delay would only prejudice the Government who has acted at all times in good faith.  The trial should proceed on October 16, 2017.

**CONCLUSION**

For the above reasons, the Court should deny the defendant's motion to suppress or for a continuance.

Dated: New York, New York
   September 15, 2017

             Respectfully submitted,

             JOON H. KIM
             Acting United States Attorney


       By:    /s/
             Damian Williams
             Andrea M. Griswold
             Joshua A. Naftalis
             Assistant United States Attorneys
             (212) 637-2298 / 1205 / 2310