UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| -v.- | : | S8 15 Cr. 536 (PGG) |
| | : | |
| KALEIL ISAZA TUZMAN and | : | |
| OMAR AMANAT, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------x

### THE GOVERNMENT'S MOTION TO QUASH KALEIL ISAZA TUZMAN'S RULE 17(c) SUBPOENA SERVED ON THE BUREAU OF PRISONS

JOON H. KIM
Acting United States Attorney for the
Southern District of New York
Attorney for the United States of America

DAMIAN WILLIAMS
ANDREA M. GRISWOLD
JOSHUA A. NAFTALIS
Assistant United States Attorneys
      *- Of Counsel -*

The Government hereby moves to quash Kaleil Isaza Tuzman's Rule 17(c) subpoena (the "Subpoena") to the Bureau of Prisons ("BOP"), which improperly seeks inadmissible impeachment material regarding cooperating witnesses Robin Smyth and Stephen E. Maiden prior to the October 30, 2017 trial.

## BACKGROUND

Defendants Isaza Tuzman and Omar Amanat are charged in Indictment S8 15 Cr. 536 (PGG) (the "Indictment") in six counts. Counts One through Three charge Amanat with various fraud counts related to a scheme by Amanat to defraud investors in a hedge fund called Maiden Capital. Count Four charges both defendants with conspiracy to commit securities fraud, in connection with a scheme to manipulate the market in KIT digital ("KITD") shares. Count Five charges Isaza Tuzman with conspiracy to commit wire fraud, in connection with his scheme to defraud KITD shareholders of money that Isaza Tuzman caused KITD to invest with Maiden Capital to further, among other things, the market manipulation conspiracy charged in Count Four. Count Six charges Isaza Tuzman with conspiracy to commit securities fraud, make false statements in SEC reports and make false statements to auditors, in connection with a wide-ranging accounting fraud scheme led by Isaza Tuzman.

Three cooperating witnesses have pleaded guilty in this case and are expected to testify at trial: (1) Robin Smyth, the former CFO of KITD; (2) Gavin Campion, the former President of KITD; and (3) Stephen E. Maiden, a former unregistered investment advisor and managing member of Maiden Capital. At various relevant times, both Smyth and Maiden have been BOP inmates. Smyth was a BOP inmate between in or about September 2015 (when he was extradited from Australia) until his release on bail following this Court's acceptance of Smyth's guilty plea, on or about May 4, 2016. Maiden has been a BOP inmate since in or about April 2015.

On August 29, 2017, defense counsel for Isaza Tuzman served the Subpoena (attached as Exhibit A) on the BOP seeking several categories of information regarding Smyth and Maiden, including (1) recorded calls and emails, including concerning Smyth and Maiden's cooperation with the Government and "any benefits" resulting from such cooperation, including the anticipated length of their prison sentences following cooperation; and (2) information on Smyth and Maiden's "cell assignments(s), cell mate(s), and visitors, including visitor logs."  To satisfy the defendant's *Touhy* obligations, the Subpoena included a cover letter (attached as Exhibit B) that described why the defendant sought the requested materials:

> We seek these documents because Mr. Smyth and Mr. Maiden are cooperating with the Department of Justice and we have a good faith basis to believe that Mr. Smyth and Mr. Maiden have fabricated evidence and/or testimony and colluded with other witnesses to inculpate Mr. Isaza Tuzman . . . . [W]e have a good faith reason to believe that such documents will be relevant to the credibility of Mr. Maiden and critical to our client's defense.

(Exhibit B at 2).

The defendant also acknowledged that the request for cell assignment and cellmates was to assist in developing lead information concerning "the identity and location of *potential* witnesses with information."  (Emphasis added).

## THE COURT SHOULD QUASH THE SUBPOENA

The Court should quash the Subpoena because it does not — as the Rules require — seek relevant, admissible evidence.[1]   Instead, the Subpoena is a classic fishing expedition for impeachment material that the Rules and the case law forbid.[2]

### A.   Applicable Law

Federal Rule of Criminal Procedure 17(c), which governs the issuance of trial subpoenas in criminal cases, does not provide a means of trolling for additional discovery.  *See Bowman Dairy Co.* v. *United States,* 341 U.S. 214, 220 (1951); *United States* v. *Nixon,* 418 U.S. 683, 699-700 (1974) (following *Bowman Dairy*); *United States* v. *Cherry,* 876 F. Supp. 547, 552 (S.D.N.Y. 1995).  Rather, Rule 17(c) allows the production of only "evidentiary" materials, that is materials that are sought as part of "good-faith effort . . . to obtain evidence."  *Bowman Dairy*, 341 U.S. at 220.

In *United States* v. *Nixon,* the Supreme Court explained that in order to require production of materials pursuant to Rule 17(c), the party seeking production must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that

---

[1]   The Government has standing to move to quash the BOP subpoena.  *United States* v. *Jackson*, No. 02 CR.756 (LMM), 2006 WL 1993251, at *1 (S.D.N.Y. July 14, 2006) (finding the Government had standing to move to quash a subpoena served on the BOP because its "legitimate interests are affected").  *See United States* v. *Nektalov*, S2 03 Cr. 828 (PKL), 2004 WL 1574721, at *1 (S.D.N.Y. July 14, 2004) (a "party whose legitimate interests are affected by a subpoena may move to quash that subpoena").  As Judge Leisure explained, "[i]nterests considered 'legitimate' in other cases in this District include preventing undue lengthening of the trial, preventing undue harassment of witnesses . . . and protecting a privilege or proprietary interest in the material.  *Id.* at 3 (citing *United States* v. *Giampa*, 1992 WL 296440, at *1-*2 (S.D.N.Y. Oct. 7, 1992)*.*

[2]   Isaza Tuzman has also served Rule 17(c) subpoenas on three law firms — Jones Day, Parker Poe, and Alvarez & Marsal (Dkt. 340).  Each firm has moved to quash based in part on the defendant's failure to satisfy the *Nixon* standard.

the failure to obtain such inspection may tend unreasonably to delay
the trial; and (4) that the application is made in good faith and is not
intended as a general "fishing expedition."

418 U.S. at 699-700 (citing *United States* v. *Iozia,* 13 F.R.D. 335, 338 (S.D.N.Y. 1952) (Weinfeld,

J.)).  In short, the party seeking the documents "must clear three hurdles: (1) relevancy; (2)

admissibility; (3) specificity."  *Nixon,* 418 U.S. at 700; *see United States* v. *R. Enterprises, Inc.,*

498 U.S. 292, 296 (1991).  The party seeking production of materials through a subpoena bears

the burden of demonstrating that production satisfies the *Nixon* test.  418 U.S. at 699-700

The defendant must first establish that a subpoena "in good faith" seeks relevant, identified

materials and is not intended as a general "fishing expedition."  *Nixon,* 418 U.S. at 700; *see United*

*States* v. *Noriega,* 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) ("If the moving party cannot

reasonably specify the information contained or believed to be contained in the documents sought

but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being

misused."); *United States* v. *Cuthbertson,* 630 F.2d 139, 144 (3d Cir. 1980) ("test for enforcement

is whether the subpoena constitutes a good faith effort to obtain *identified evidence* rather than a

general 'fishing expedition' that attempts to use the rule as a discovery device") (emphasis added).

"Rule 17 was not intended to provide the defendant a mechanism by which to troll the waters of

the seas of otherwise undiscoverable material in the small hope that something beneficial might

rise to the surface."  *United States* v. *King,* 164 F.R.D. 542, 546 (D. Kan. 1996).  Rather, Rule

17(c) permits a defendant to subpoena only those documents or materials that have evidentiary

value. *Bowman*, 341 U.S. at 221.

In addition to relevance, the defendant must demonstrate that the requested materials are

admissible as evidence at trial.  *See, e.g.*, *R. Enterprises, Inc.,* 498 U.S. at 299 (under *Nixon,* "a

party must make a reasonably specific request for information that would be both relevant and

4

admissible at trial"); *United States* v. *Arditti*, 955 F.2d 331, 346 (5th Cir. 1992) (quashing subpoena where defendant "failed to establish with sufficient specificity the evidentiary nature of the requested materials"); *Cuthbertson*, 630 F.2d at 144 ("Rule 17(c) is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial"); *United States* v. *Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965) (subpoena must satisfy relevancy and admissibility tests); *Cherry*, 876 F. Supp. at 552 ("in order to be procurable by means of a Rule 17(c) subpoena, materials must themselves be admissible evidence").

Under this test, Rule 17(c) is different from the civil rules which permit the issuance of subpoenas to seek production of documents or materials which, although themselves not admissible, may lead to admissible evidence.  *See Cherry*, 876 F. Supp. at 552; *see also United States* v. *Gross*, 24 F.R.D. 138, 141 (S.D.N.Y. 1959) (Rule 17(c) cannot be used "to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case.  This type of discovery, permissible under the Federal Rules of Civil Procedure, has not been authorized for criminal trials").  Thus, "a mere hope that the documents, if produced, may contain evidence favorable to the defendant's case will not suffice.  Rule 17(c) requires a showing that the materials sought are *currently admissible* in evidence; it cannot be used as a device to gain understanding or explanation."  *United States* v. *Rich,* 1984 WL 845, at *3 (S.D.N.Y. 1984) (emphasis added; internal quotations and citations omitted); *see also United States* v. *Purin*, 486 F.2d 1363, 1368 (2d Cir. 1973); *United States* v. *Murray*, 297 F.2d 812, 821 (2d Cir. 1962).  In attempting to justify the use of a Rule 17(c) subpoena, "conclusory statements that the documents may be relevant and admissible are insufficient" to overcome the *Nixon* hurdles.  *United States* v. *Burger*, 773 F. Supp. 1419, 1425 (D. Kan. 1991) (citing *United States* v. *Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981)).

Moreover, courts have repeatedly held that a Rule 17(c) subpoena may not be used to obtain impeachment material prior to trial. *See, e.g.*, *Nixon*, 418 U.S. at 701 ("[g]enerally the need for evidence to impeach witnesses is insufficient to require its production") (citations omitted); *Cherry*, 876 F. Supp. at 552 (holding that a Rule 17(c) subpoena may not "legitimately be used to obtain material whose sole evidentiary value is to impeach the credibility of witnesses"); *Nektalov*, 2004 WL 1574721, at *2 (same); *Jasper*, 2003 WL 1107526, at *2 (same); *United States* v. *Coriaty*, 99 Cr.1251 (DAB), 2000 WL 1099920, at *7 (S.D.N.Y. Aug. 7, 2000) (same); *Iozia*, 13 F.R.D. at 340 (Rule 17(c) cannot be used "to require in advance of trial, and in preparation for trial, a disclosure to the defendant of information which may tend to impeach persons the Government may or may not call as witnesses").[3]

Indeed, because extrinsic evidence is generally not admissible to impeach a witness, under Federal Rule of Evidence 608(b), the improper impeachment material sought by the defendant is also inadmissible. Thus, it also cannot be demanded through a Rule 17 subpoena for that reason alone. *See United States* v. *Carollo,* No. 12CR.654 (HB), 2012 WL 1195194, *2 (S.D.N.Y April 12, 2012) (recognizing that extrinsic evidence of prior conduct offered to impeach a witness is not admissible under Rule 608(b)).

---

[3]     The defendant moved to quash the Government's Rule 17(c) subpoenas on Harvard and Goldman Sachs because they purportedly seek impeachment materials. (Dkt. 428, at 8) ("A Rule 17(c) subpoena may not be used solely for impeachment at a criminal trial") (emphasis omitted). And yet the defendant has been quite clear why he wants the material demanded by the Subpoena. *See, e.g.*, Ex. B at 2 (documents will be "relevant to the credibility of Mr. Smyth and Mr. Maiden and critical to our client's defense"), at 2 (evidence of Maiden's "fabrication and collusion will be found in documents"), at 2 (evidence of Smyth's "fabrication and collusion will be found in documents"), at 2 (documents are "imperative in order for Mr. Isaza Tuzman to explore the motivation, and possible biases, that concern Mr. Maiden and/or Mr. Smyth"). As set forth in a letter dated yesterday, (Dkt. 457), the Government has agreed to withdraw its subpoenas to Harvard and Goldman Sachs in exchange for defense counsel's representation that he will stipulate that the defendant's Harvard transcript is authentic and constitutes a business record.

### B.      Discussion

Here, the Subpoena and the defendant's own letter to BOP make plain that the defendant is engaged in a speculative fishing expedition to search for potential material to impeach Smyth and Maiden and to develop potential leads for defense witnesses.   Because these are plainly improper uses of a Rule 17(c) subpoena, the Subpoena must be quashed.

*First*, Isaza Tuzman requests BOP phone calls and emails relating to the defendants or the subject matter of this case.   (Ex. A, Nos. 1-5).   These requests are based on speculation that such phone calls and emails may show that "Mr. Smyth and Mr. Maiden have fabricated evidence and/or testimony and colluded with other witnesses to inculpate Mr. Isaza Tuzman."  (Exhibit B at 1).   As noted above, however, materials sought via Rule 17 subpoena "cannot be *potentially* relevant or admissible, *they must meet the test of relevancy and admissibility at the time they are sought.*" *Marchisio*, 344 F.2d at 669 (emphasis added); *see also Cherry*, 876 F. Supp. at 552 (same); *Burger*, 773 F. Supp. at 1425.[4]   Moreover, speculation that materials may contain admissible impeachment material is insufficient to justify a Rule 17(c) subpoena.   *See, e.g.*, *United States* v. *Pena*, No. 15 CR.551 (AJN), 2016 WL 8735699, *2 (S.D.N.Y. Feb. 12, 2016) (quashing subpoenas to the MCC and MDC seeking records to impeach cooperating witnesses); *United States* v. *DiPietro*, No. S502 CR.1237 (SWK), 2005 WL 1279222, *1 (S.D.N.Y. May 26, 2005) (quashing subpoena directed to MDC and MCC seeking all telephone calls and visitor records of incarcerated Government

---

[4]      The defendant has also failed to provide any basis for how he intends to meet the threshold requirements of foundation and authentication to introduce these documents.   To the extent the defendant intends to a call a BOP custodian to authenticate the documents, the Subpoena includes no such request.   Moreover, any such request would have to comply with the applicable *Touhy* regulations, which require the defendant to set forth "a summary of the testimony" sought from any such witness.   *See* 28 C.F.R. § 16.23(c); *see generally United States ex rel. Touhy* v. *Ragen*, 340 U.S. 462, 467-68 (1951).   Not having identified any particular documents that satisfy the *Nixon* standards, it is unsurprising that the defendant has not provided any such summary.

witnesses because such material "go[es] far beyond the bounds of permissible discovery in a criminal case"); *United States* v. *Hutchinson*, No. 97 CR 1146, 1998 WL 1029228, at \*2 (E.D.N.Y. Dec. 23, 1998) (quashing subpoena directed to MDC requesting all telephone calls of Government witness because "the defendant [could not] 'reasonably specify the information contained or believed to be contained' in the tape recorded conversations of the potential witness . . . . '[T]his is a sure sign that the subpoena is being misused.'" (quoting *Noriega*, 764 F.Supp. at 1493)).

     *United States* v. *Barnes*, 11 Cr. 184 (DLC) is instructive.  There, the defendants served Rule 17(c) subpoenas seeking prison calls and emails for cooperating government witnesses in the hope that such materials could lead to admissible evidence of fabrication and collusion.  Judge Cote quashed the subpoenas, explaining:

> I want to reflect more on this, but as of now I am going to grant the motions to quash the three subpoenas to the [BOP]. . . .  With respect in particular to the prison records, this is a layer of conjecture and speculation that, one, the witnesses after they made a decision to become cooperating witnesses have been concocting stories; and two, that records of e-mail correspondence, tape-recorded phone calls or housing assignments and travel within an institution, records of each of those would somehow be productive of evidence to show this, I want to look at the law more carefully and reflect on it more. But as of now I am going to grant the motions to quash.

2013 WL 6054998, \*16.  Judge Cote later confirmed her decision, "finding that the subpoenas as structured were little more than a fishing expedition and lacked the specificity and evidence of admissibility of the subpoenaed material that would support a 17(c) subpoena." (*Id.*)  The Second Circuit affirmed Judge Cote's decision.  *United States* v. *Barnes*, 560 F. App'x 36, 40 (2d Cir. 2014) (Summary Order) ("Having reviewed the record, we easily conclude that Barnes failed to make such a showing, proffering only speculation that inmates cooperating with the government

were conspiring to testify falsely against him and that the subpoenaed materials would so demonstrate.").  The holding and reasoning in *Barnes* applies here.

 *Second*, the Subpoena also seeks "[d]ocuments and records sufficient to show [Smyth and Maiden's] cell assignment(s), cell mate(s), and visitors."  (Ex. A).  The defendant concedes he wants these materials to develop leads on imagined potential witnesses who can potentially impeach Smyth or Maiden.  (Ex. B at 2 ("[I]nformation concerning the cell assignments and cellmates of Mr. Smyth is necessary to obtain the identity and location of potential witnesses with information concerning Mr. Smyth's statements regarding the fabrication of evidence and testimony concerning Mr. Isaza Tuzman.")).  This too is improper.  *See, e.g.*, *Pena*, 2016 WL 8735699, *2 ("Pena's argument that the telephone recordings and emails could generate leads which would in turn produce admissible evidence is not sufficient)*; *Gross*, 24 F.R.D. at 141 (Rule 17(c) subpoena cannot be used "to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case")

 In short, the defendants may not serve a subpoena in order to circumvent the criminal discovery rules on the mere hope that it might uncover tangential impeachment evidence or leads about potential defense witnesses.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court quash the Subpoena.

Dated:  New York, New York
      September 26, 2017

                      Respectfully submitted,

                      JOON H. KIM
                      Acting United States Attorney

         By:    /s/_____
                      Damian Williams
                      Andrea M. Griswold
                      Joshua A. Naftalis
                      Assistant United States Attorneys
                      Tel.: (212) 637-2298 / 1205 / 2310