**O'NEILL / HASSEN**                                     Attorneys at Law

December 18, 2019

<u>VIA ECF and Email</u>
Honorable Paul G. Gardephe
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

RE: *United States v. Omar Amanat,* 15 Cr. 536 (PGG)

Dear Judge Gardephe:

We represent Omar Amanat in the above-captioned matter. Mr. Amanat's motion for discovery was filed on November 15, 2019.  The government filed its response on December 12, 2019. Mr. Amanat submits this reply to address argument the government raised in its responding brief. The government did not address many of our opening arguments in its response.

## Introduction

Mr. Enotiades created a business by leveraging his position with the government to acquire private clients, including the Amanats, with promises of cooperation agreements, 5k letters, and non-prosecution agreements. These claims were bolstered by his decades-long relationship with federal agents and prosecutors. The government does not deny Mr. Enotiades' dual role as both defense fixer and professional government agent and witness.

Mr. Enotiades both works for the government as a freelance agent or confidential source, and as a defense investigator and fixer. In this case, he secured payment for work for Mr. Amanat as a defense investigator, all the while working for the specific prosecution squad that was prosecuting Mr. Amanat. Eventually, Mr. Enotiades turned on Mr. Amanat and told his FBI handlers that Mr. Amanat had asked him to make a fake bank account or evidence of fraudulent transactions a year earlier. The fact that Enotiades worked on both sides of this case creates myriad constitutional concerns. The government has blithely ignored the fraught ethical situation and instead continues to treat Mr, Enotiades as an ordinary one-time, witness.

Honorable Paul G. Gardephe
*United States v. Omar Amanat,* 16 Cr. 536 (PGG
December 18, 2019
Page 2 of 5

Our discovery requests are not arbitrary 'fishing expeditions', but rather are an attempt at understanding the contours of these relationships, so that we may counter Enotiades' accusation that he was hired by the Amanats to create a fake bank account and/or documents showing a fake bank transaction. The Department of Justice has guidelines for both its agents and the handling of sources by agents. It appears that Enotiades is operating outside of any ethical and legal boundaries and in violation of the clear rules that govern both agents and sources. This is a unique situation.

We appreciate the government's efforts to provide the materials it has given us so far. However, the government's response downplays the issues involved in this case and does not grapple with the inherent problems posed by Mr. Enotiades' dual role in this case. Mr. Amanat needs the information we requested as discovery.

We have enclosed a chart that details the discovery that is outstanding as Exhibit A..

## Mr Enotiades' Role and Credibility

As discussed at length in the prior defense submissions from both defendants, Mr. Enotiades is not a typical witness. The length of his tenure, the depth of his participation in cases, and the strong relationships he has developed with agents and prosecutors position him quite differently than a typical cooperating witness or confidential human source. He blurs the line between agent and witness.

We requested items related to his employment and his credibility not for "fishing" purposes, but so that we could better understand the relationship between Mr. Enotiades and the government. This information is critical to determining the appropriate scope of discovery and *Brady* and its progeny, including *Giglio* and *Kyles*. As in *Gigilio*, the government's allegation here "depends almost entirely on [witnesses] testimony." *Giglio* v *United States*, 405 U.S. 150, 154 (1972). Enotiades' credibility is material to defending the allegations against Mr. Amanat.

We have requested items that are within the control of the government and go to Mr. Enotiades' credibility as a witness. Reponses would help clarify where Mr. Enotiades falls on the spectrum of employee/agent on one end and genuine third-party witness on the other.

O / H

Honorable Paul G. Gardephe
*United States v. Omar Amanat,* 16 Cr. 536 (PGG
December 18, 2019
Page 3 of 5

Instead of seeking to acquire information that would shed light on Mr. Enotiades' credibility, the government has instead asked Mr. Enotiades to provide it with that very material. Rather than asking his handlers for reports about his credibility and work for the government, it has asked him about whether he was ever terminated. Instead of reviewing his electronic devices to determine whether there were responsive materials, the government has asked Mr. Enotiades to search his own phones. This is clearly not appropriate. The Fifth Amendment to the Constitution and *Kyles v. Whitley,* 514 U.S. 419 (1995) make clear that the government may not avoid knowledge of Enotiades' prior wrongdoing.

## *Brady* Materials

The government rightly points out the that a "prosecutor is presumed… to have knowledge of all information gathered in connection with his office's investigation of the case and indeed has a duty to learn of any favorable evidence known to the others acting on the government's behalf." *U.S. v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (internal citations and quotation marks omitted). Here, Mr. Enotiades is certainly working on the government's behalf and under the direction of the prosecution team, even though the government argues that he was not when he was hired by Mr. Amanat to assist in his defense. Enotiades' text communications with Agent Amato read as those of colleagues—e.g. discussing other work assignments and scheduling.[1] While attempting to weigh his multiple government priorities, he makes sure to articulate his dedication to this case, stating, "I am literally slammed with a number of cases (running simultaneously) … However, i[*sic*] am also committed in doing what I have to do for your case and SDNY….[*sic*] Please kindly let me know … what is expected from me ."[2] While "knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor," (*Avellino* at 255) the government here has acknowledged that Mr. Enotiades was not even in a different office, but was assigned to their specific FBI Prosecution Squad starting in 2011, well before Mr. Amanat's prosecution began.. The concern in *Avellino* of imposing an "unlimited duty" that would "condemn" the prosecution to "a state of paralysis" is simply not present here. In fact, the prosecution team has already been in contact with many of the relevant individuals and agencies, but has thus far refused to provide any documents from those agencies that would be responsive to our requests.

---

[1] See e.g. 3558-28 p9.
[2] 3558-28 p10.

**O / H**

Honorable Paul G. Gardephe
*United States v. Omar Amanat,* 16 Cr. 536 (PGG
December 18, 2019
Page 4 of 5

The government argues that because "[n]o members of the Prosecution Team ever directed the CHS to contact or investigate the Amanats,"[3] (i.e. because Mr. Enotiades did not begin participating in the prosecution of the Amanats on the prosecutors' direction) he is not part of the prosecution team, and is therefore exempt from *Brady* considerations. But *Brady*, as an imputed duty, cannot hinge on specific instructions given. The government's interpretation of Brady would have the effect of eliminating bad acts by law enforcement so long as no order to act badly was given—a complete undermining of the Fifth Amendment, and *Brady's* holding that the duty applies "irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Regardless of whether Agent Amato "instructed [the CHS] that the FBI was specifically not asking or directing him to take any action with regard to the Amanats" (Amato Decl. ¶¶ 13), Mr. Enotiades had already performed an investigation of the Amanats, and he was only able to do so because of his position within the government. Furthermore, Mr. Enotiades knows that he is only able to act at the direction of agents, "one has to follow instructions. There are things that one can never do like, for example, you can never, unless otherwise instructed, you don't act, you don't get engaged in any illegal act. You always report all meetings that you may or may not have or phone calls or any kind of contacts with targets…. You never use your relationship with DEA as a method of acting illegally; all in all, you just follow the law." *United States v. Umeh,* Tr. 506-7.

The government is trying to disavow any responsibility for Mr. Enotiades' actions because it claims he is merely a source. Yet it simultaneously tasks Mr. Enotiades with conducting his own analysis of his cellular phone and with analyzing his own adverse credibility findings. The defense does not know whether or not Mr, Enotiades' side business selling access to the government is typical; we assume it is not and have therefore requested information about what actually happened in this case. We have requested information about the procedures and regulations the government has in place to prevent any unethical behaviors. The answers thus far are lacking.

**Rule 16**

---

[3] Govt Resp. p. 10.

O / H

Honorable Paul G. Gardephe
*United States v. Omar Amanat,* 16 Cr. 536 (PGG
December 18, 2019
Page 5 of 5

"Courts have typically required the prosecution to disclose under Rule 16 documents material to the defense that (1) it has actually reviewed, or (2) are in the possession, custody, or control of a government agency so closely aligned with the prosecution so as to be considered part of the prosecution team." *United States v. Finnerty*, 411 F. Supp. 28 428, 432-33 (S.D.N.Y. 2006) (citing *United States v. Chalmers*, 410 F. Supp. 2d 278, 290 (S.D.N.Y. 2006). Further, the "failure to provide reasonably available material that might be helpful to the defense and which does not pose any risks to witnesses or to ongoing investigation is contrary to requirements of due process and to the purposes of the Confrontation Clause." *United States* v *Zanfordino*, 833 F Supp 429, 432 (S.D.N.Y. 1993).

In this Circuit, the scope of 'the government' is not as clear as the government would have the Court believe. Judge Kaplan grappled with the scope of 'the government' as it pertains to *Brady* and Rule 16 in *United States v. Ghailani,* 687 F.Supp. 2d 365 (S.D.N.Y. 2010). The court found that "what is called for… is a practical interpretation of Rule 16 that would serve its goal of fairness to a criminal defendant by requiring the disclosure of documents material to the defense while at the same time avoiding an overly expansive construction that would thwart or unduly hamper this prosecution or prosecutions in general by imposing unreasonable disclosure obligations." *Id.* at 372. There, the government was ordered to turn over documents within the custody or control of the Department of Justice.

The government should provide the materials the defense has requested.

## Conclusion

For the foregoing reasons we respectfully move this Court for an order directing the government to provide us with the requested discovery.

Kind regards,

/s/

Abraham J. Hassen
Grainne E. O'Neill

O / H