# WILLKIE FARR & GALLAGHER LLP

Randall W. Jackson
212 728 8216
rjackson@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

January 24, 2020

**VIA ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

Re:     *United States v. Amanat*, 15 Cr. 536 (PGG)

Dear Judge Gardephe:

      This letter is respectfully submitted on behalf of defendant Omar Amanat to alert the Court to newly developed information relevant to new authority and the pending Rule 29 and 33 motions. *Cf*. Fed. R. App. Proc. 28(j); *see also* Fed R. Crim. Proc. 33. The undersigned attorney recently completed a trial before the Honorable William F. Kuntz, in the Eastern District of New York, *United States v. Jean Boustani*, No. 18 Cr. 681 (WFK) (EDNY), in which evidence was introduced that further underscores the Government's failure in this case to introduce sufficient proof of an interstate wire contemplated or sent in furtherance of Counts One and Two, as well as the Government's failure to prove venue. This evidence also goes to the errors in the Government's jury argument highlighted in our February 2018 motion for judgment of acquittal and a new trial.

      As we described in our June 2019 letter to Your Honor, the Second Circuit last year issued a clarifying decision regarding the Government's burden in wire fraud cases – *Bascuñán v. Elsaca*, 927 F.3d 108, 122 (2d Cir. 2019) ("There are three "essential elements" to mail or wire fraud: "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." Weaver, 860 F.3d at 94 (citation omitted, emphasis added). These elements make clear that the regulated conduct is not merely a "scheme to defraud," but more precisely *the use of the mail or wires in furtherance of a scheme to defraud.*") (emphasis in original). The Court also emphasized that "[f]or this reason, the use of the mail or wires must be essential, rather than merely incidental, to the scheme to defraud. We therefore

Hon. Paul G. Gardephe
January 24, 2019
Page 2

hold that a claim predicated on mail or wire fraud involves sufficient domestic conduct when (1) the defendant used domestic mail or wires in furtherance of a scheme to defraud, and (2) the use of the mail or wires was **a core component** of the scheme to defraud." *Id.* (emphasis added). This ruling, as we argued in our previous submissions, underscores the Government's failure at the trial of Mr. Amanat to meet its burden on Counts One and Two.

On December 18, 2018, Your Honor issued an Order requiring the Government to supplement its briefing on the issue raised by Mr. Amanat's argument that the Government had failed to identify any interstate wire contemplated or sent in furtherance of Counts One and Two. As detailed in Mr. Amanat's January 3, 2019 Response in Opposition, the Government's supplemental submission failed to meaningfully address any of the complex issues raised by its failure to introduce sufficient evidence on this point. With regard to Count One, in its December 26, 2018 submission, the Government continued to suggest that a wire fraud conspiracy could be advanced without any contemplated or actual wire being involved in the conspiracy. To the extent that this idea was ever cognizable, *Bascuñán* fatally undermined it. With regard to Count Two, the Government based its arguments regarding "the interstate wire element" on the idea that a JP Morgan Chase account was "associated with an address in Manhattan." Gov. Dec. 26, 2018 Let. at  4 ("Specifically, the Government introduced evidence that Amanat wired more than $500,000 to Maiden Capital in North Carolina in 2011 and 2012. Amanat directed these wires from two Enable-affiliated accounts: a JP Morgan Chase account (the 'Chase Enable Account') and a First Republic account (the "First Republic Enable Account"). The evidence established the Chase Enable Account was associated with an address in Manhattan and the First Republic Enable Account was associated with an address in New Jersey."). As the defense previously argued before Your Honor, it was improper and unsound for the Government to argue that an inference could be drawn that a wire passed through any of these locations simply because a bank account listed an address at that location.

This point was definitively proven at the *Boustani* trial, which concluded with the acquittal of Mr. Boustani last month on all charges. At that trial, Mr. Timothy Coffey, Vice President in the wire operations department of JP Morgan Chase, offered testimony that was subject to cross-examination by the U.S. Department of Justice. (*Boustani* Tr. at 3778, attached as Exhibit A). Mr. Coffey testified that he had been involved with JP Morgan Chase's wire transfers since 1988. (*Boustani* Tr. at 3778). Mr. Coffey further offered the following testimony:

Q   In your role, in your experience have you become familiar with how wire transfers are processed at JP Morgan Chase?

A   Yes. My years in the bank have been spent with the initiation of wires, the investigation of wires, the through-put of wires as they move through the applications, and presently right now I'm in the wire fraud space.

33009791.1

Hon. Paul G. Gardephe
January 24, 2019
Page 3

> Q   Can you tell us what percentage of wire transfers are handled automatically at JP Morgan Chase without any need for any human intervention?
>
> A   98 percent.
>
> Q   And do those wire transfers, automated wire transfers, involve servers and computer equipment?
>
> A   They do.
>
> **Q   Are any of the servers that are involved in processing wire transfers at JP Morgan located in the State of New York?**
>
> **A   They are not.**

(Boustani Tr. 3778-79) (emphasis added). Mr. Coffey further testified that:

> Q   Now, you mentioned 98 percent of the wire transfers are handled in an automated fashion, that leaves 2 percent. Can you explain why it is in 2 percent of the circumstances a wire transfer may necessitate some kind of human involvement?
>
> A   Sure. If a payment instruction comes into the bank, and the payment application is due to artificial intelligent is to unable to decipher what the intent of the wire was, it will kick out some sort of operator intervention to massage the transaction.
>
> Q   To the extent that it requires such massaging, where are the masseuses at JP Morgan located?
>
> A   Florida, India and Philippines.
>
> **Q   Were any of the humans that would be involved in a wire transfer located in New York state?**
>
> **A   No.**

(Boustani Tr. 3779-80) (emphasis added).

Finally, Mr. Coffey explained that a specific wire transfer record that the Government had introduced at trial, which specified a location of "JP Morgan Chase bank for Metro Tech Center, Brooklyn, New York" did not indicate that *anything* related to the actual wire in fact happened at that location. (Boustani Tr. 3782) ("Q Did anything relating to this wire transfer in fact happen at Four Metro Tech Center in Brooklyn, New York? A No, it did not.").

All of this goes to the point that the defense has made repeatedly since the time of the trial with regard to the purported evidence of wire fraud: **there was no cognizable evidence of a contemplated or actual interstate wire introduced at Mr. Amanat's trial.** Moreover, there was no evidence of an interstate wire that passed through, originated, or terminated in the

Hon. Paul G. Gardephe
January 24, 2019
Page 4

Southern District of New York. The inferences that the Government attempted to argue at trial and in response to Your Honor's Order instructing the Government to provide more information were unsound on their face. The testimony described above shows that these argument were, moreover, simply wrong as a matter of fact. The fact that an address in New York appeared on *some document* related to a wire transfer did not indicate anything involving that transfer occurred in New York.

      For all of these reasons, and the reasons articulated in our prior submissions, we respectfully submit that the Court should grant Mr. Amanat's motion for judgment of acquittal. The undersigned is happy, of course, to answer any questions that the Court may have. We appreciate the Court's consideration.

Respectfully submitted,

_____/s/_____

Randall W. Jackson

cc: All Counsel

33009791.1