UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

OMAR AMANAT and IRFAN AMANAT,

Defendants.

**ORDER**

15 Cr. 536 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        At separate trials, Defendants Omar Amanat and Irfan Amanat – who are brothers and alleged co-conspirators – were convicted of (1) conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; (2) substantive wire fraud in violation of 18 U.S.C. §§ 1343 and 2; (3) aiding and abetting investment advisor fraud in violation of 15 U.S.C. § 80b-6 and 80b-17 and 18 U.S.C. § 2; and (4) conspiracy to commit securities fraud in violation of 18 U.S.C. § 371. (S8 Indictment (Dkt. No. 198) Counts 1-4; Verdict Forms (Dkt. Nos. 627, 848))

        On December 26, 2017, after the jury's guilty verdict, the Court remanded Omar Amanat. (Trial Tr. (Dkt. No. 708) at 7328) The Court did so after finding that Omar Amanat had failed to demonstrate by "clear and convincing evidence" that he was not a flight risk. (Id. at 7326-28 (citing 18 U.S.C. § 3143(a)) In support of its ruling, the Court cited the following factors: (1) Omar Amanat's repeated non-compliance with the home confinement electronic monitoring condition of his pretrial release (id. at 7327); (2) his "significant international travel" and "ties to Dubai" – a country with which the United States does not have an extradition treaty (id. at 7328); (3) "[s]ubstantial evidence . . . introduced at trial that [Omar Amanat had] fabricated emails that were introduced into evidence," which demonstrated "a disregard and a disdain for the Court and for legal process" (id.); and (4) that it was "highly likely that a term of

imprisonment [would] be imposed on Mr. Amanat, and it [would] likely . . . be substantial."
(Id.) Given these circumstances, the Court concluded that there was not "clear and convincing evidence that Mr. Amanat [would] not flee pending sentence if his bail is continued." (Id.)

Irfan Amanat was remanded on October 29, 2018, after the jury's guilty verdict. (Verdict Form (Dkt. No. 848); Trial Tr. (Dkt. No. 867) at 950-51) The Court ruled that Irfan Amanat had likewise not demonstrated by "clear and convincing evidence" that he was not a flight risk. (Trial Tr. (Dkt. No. 867) at 946-47 (citing 18 U.S.C. § 3143(a)) In so ruling, the Court cited the following factors: (1) that between 2005 and 2015, Irfan Amanat had resided in Dubai – a country with which "the United States does not have an extradition agreement" (id. at 949); (2) Irfan Amanat had engaged in "significant international travel" including to "London, Spain, Italy, and other locations," and has family overseas, including a brother in Singapore (id. at 950); (3) Irfan Amanat "faces a very substantial sentence," and there are no "legal issues that would be likely to result in reversal of a conviction" (id. at 948), and (4) a proposed $1.5 million bond secured by $250,000 in property was insufficient to secure his return to court.[1] (Id. at 943-44, 950-51)

---

[1] In support of its remand motion, the Government proffered that the Amanat brothers had engaged in a scheme to have an Allied Chartered Bank employee sign an affidavit falsely stating that $500,000 had been deposited into an Allied Chartered account for the benefit of two cooperating witnesses who testified against Omar Amanat at his trial. According to the Government, Defendants intended to introduce this affidavit at trial to suggest – falsely – that a business rival paid the key cooperating witnesses to testify against Omar Amanat. Irfan Amanat allegedly delivered the proposed fraudulent affidavit for signature. Unbeknownst to the Amanat brothers, the person who purported to be assisting them in obtaining the fraudulent affidavit was an FBI informant. (Trial Tr. (Dkt. No. 867) at 904-09; Dec. 19, 2019 Govt. Ltr. (Dkt. No. 1049)) The Government intended to call the informant to testify in support of its remand motion regarding Irfan Amanat, but on the day of his proposed testimony, the informant suffered an apparent heart attack and was hospitalized. (Trial Tr. (Dkt. No. 867) at 952) The Government instead called an FBI agent who offered hearsay testimony as to the alleged scheme. (Id. at 904, 907, 909-40) Because the Court did not hear directly from the informant, it elected not to rely on his information in deciding to remand Irfan Amanat. (Id. at 950-51)

Defendants now seek release on bail.[2] They have each submitted multiple letters in support of their respective bail applications.[3] The Government opposes Defendants' requests for bail. (Mar. 18, 2020 Govt. Ltr. (Dkt. No. 1064); Mar. 30, 2020 Govt. Ltr. (Dkt. No. 1073)) Defendants are currently detained at the Metropolitan Detention Center ("MDC") and await sentencing.[4]

## I.  LEGAL STANDARD

The Bail Reform Act, 18 U.S.C. § 3143(a), provides that

> the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes

---

[2] Defendants have consented to having their bail applications decided on the papers, and have waived their right to a hearing. (Dkt. Nos. 1077, 1078)

[3] Mar. 13, 2020 O. Amant Ltr. (Dkt. No. 1057); Mar. 17, 2020 I. Amanat Ltr. (Dkt. No. 1062); Mar. 18, 2020 O. Amanat Ltr. (Dkt. No. 1063); Mar. 18, 2020 I. Amanat Ltr. (Dkt. No. 1065); Mar. 20, 2020 O. Amanat Ltr. (Dkt. No. 1066); Mar. 25, 2020 O. Amanat Ltr. (Dkt. No. 1070); Mar. 25, 2020 I. Amanat Ltr. (Dkt. No. 1068); Mar. 29, 2020 I. Amanat Ltr. (Dkt. No. 1071); Mar. 29, 2020 O. Amanat Ltr. (Dkt. No. 1072); Mar. 31, 2020 O. Amanat Ltr. (Dkt. No. 1074) (Apr. 8, 2020 I. Amanat Ltr. (Dkt. No. 1079).

[4] Sentencing has been delayed by Defendants' voluminous post-trial motions (Dkt. Nos. 735, 883) and Defendants' claims that they hired the aforementioned FBI informant (see supra n.1) to serve as a consultant to assist in their defense, without knowing that he was a government informant. (Aug. 15, 2019 I. Amanat Ltr. (Dkt. No. 1020; Aug. 28, 2019 O. Amanat Ltr. (Dkt. No. 1026)) Defendants contend that the informant, inter alia, "insisted that Omar Amanat fire his then counsel and retain Randall Jackson" – an "attorney whom [the informant] used to work with when Mr. Jackson was an AUSA . . . and with whom [the informant] continues to share a personal relationship." (Aug. 15, 2019 I. Amanat Ltr. (Dkt. No. 1020) at 3) The informant also allegedly advised Irfan Amanat "not to take the Government's plea offer," even though his then-counsel advised him to accept the plea offer. (Id.) Defendants have sought extensive discovery about the nature of the informant's work with the Government, and the extent to which he shared information about the Amanats with the Government. (I. Amanat Discovery Mot. (Dkt. No. 1041); O. Amanat Discovery Mot. (Dkt. No. 1042)) According to Irfan Amanat, the discovery Defendants are seeking "could possibly lead to (1) a motion to change Irfan Amanat's bail conditions; (2) a motion for prosecutorial misconduct; (3) a motion for a new trial; and (4) a motion to dismiss the charges in the interests of justice." (Id. at 4; see also Aug. 28, 2019 O. Amanat Ltr. (Dkt. No. 1026) (anticipating that "motions . . . will be made in [connection with the informant's] involvement with the case"))

> such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

18 U.S.C. § 3143(a)(1). This statute "establishes a presumption in favor of detention." United States v. Abuhamra, 389 F.3d 309, 319 (2d Cir. 2004) ("Once guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal.") (internal quotation marks omitted). The burden on defendants is "plainly substantial," but "if a defendant can make the required evidentiary showing, the statute establishes a right to liberty that is not simply discretionary but mandatory." Id.

## II. PARTIES' ARGUMENTS

### A. Defendants

Defendants argue that they should be released on bail for the following reasons: (1) they are not dangers to the community; (2) they pose no risk of flight; (3) an inmate at the MDC has tested positive for COVID-19; (4) the MDC is not adequately prepared to protect inmates from the spread of COVID-19; (5) Defendants are especially vulnerable to COVID-19 given their health conditions, which include diabetes and cardiovascular issues[5]; (6) Defendants may serve more time than they are ultimately sentenced to if they are not released; (7) Defendants were convicted of non-violent financial crimes; and (8) they seek to care for their elderly and ailing parents. (See, e.g. Mar. 13, 2020 O. Amanat Ltr. (Dkt. No. 1057) at 1, 7, 9-11; Mar. 17, 2020 I. Amanat Ltr. (Dkt. No. 1062) at 1, 4; Mar. 29, 2020 I. Amanat Ltr. (Dkt. No. 1071) at 3; Mar. 31, 2020 O. Amanat Ltr. (Dkt. No. 1074) at 4) Omar Amanat also notes that his

---

[5] Omar Amanat is 47 years old and asserts that he suffers from high cholesterol, a partially blocked carotid artery, a history of mini-strokes, and diabetes. (Mar. 13, 2020 O. Amanat Ltr. (Dkt. No. 1057) at 1, 9; Mar. 18, 2020 O. Amanat Ltr. (Dkt. No. 1063) at 1; Mar. 20, 2020 O. Amanat Ltr. (Dkt. No. 1066), Ex. D; Mar. 25, 2020 O. Amanat Ltr. (Dkt. No. 1070) at 1) Irfan Amanat is 48 or 49 years old and asserts that he has diabetes and an unspecified "heart condition." (Mar. 29, 2020 I. Amanat Ltr. (Dkt. No. 1071) at 2; I. Amanat PTS Rpt. at 2 (noting that he was 45 years old as of December 5, 2016))

4

release would help him reconnect with his children and fast during Ramadan, which begins on April 23, 2020.  (Mar. 13, 2020 O. Amanat Ltr. (Dkt. No. 1057) at 9-11)

As for a proposed bail package, Omar Amanat suggests that he be released on a $1 million bond secured by the signatures of three financially responsible people, and that he be subject to home confinement at his parents' residence in New Jersey (after a two-week quarantine elsewhere).  (Id. at 1, 11)  Irfan Amanat proposes that he be released on a $500,000 bond secured by the signatures of five financially responsible people, and that he be subject to home confinement at his parents' residence in New Jersey.  (Mar. 17, 2020 I. Amanat Ltr. (Dkt. No. 1062) at 4)  Irfan Amanat also agrees to surrender all travel documents and to not apply for new travel documents.  (Id. 4 n.3)

### B. The Government

The Government opposes Defendants' applications for bail, arguing that (1) both Defendants remain flight risks for the same reasons that the Court articulated when it remanded them; (2) Defendants are dangers to the community because they attempted to present fabricated evidence to the Court to falsely suggest that cooperating witnesses had been paid to testify against them (supra n.1); (3) the MDC is equipped to manage the risks posed by COVID-19 and it has implemented various measures to do so; and (4) Defendants' health does not make them "uniquely" vulnerable to COVID-19.  (Mar. 18, 2020 Govt. Ltr. (Dkt. No. 1064); Mar. 30, 2020 Govt. Ltr. (Dkt. No. 1073) (citing Dec. 11, 2019 Govt. Ltr. (Dkt. 1049))

## III. ANALYSIS

This Court cannot find by "clear and convincing evidence" that Defendants do not pose a flight risk.  See 18 U.S.C. § 3143(a)(1).

Both Defendants have engaged in significant international travel[6] and have substantial connections with Dubai – a country with which the United States does not have an extradition treaty. Indeed, Irfan Amanat lived in Dubai – pursuant to a residency visa that allowed him to live and work in that country – for the ten years that preceded this case. (Trial Tr. (Dkt. No. 867) at 948-49; I. Amanat PTS Rpt. at 2) Irfan Amanat set up Enable Invest Ltd. – a Dubai-based asset management firm – after the Securities and Exchange Commission issued an order in November 2006 that barred him from associating with any broker-dealer for five years. The bar order was premised on a finding that Irfan Amanat had engaged in fraud. (Trial Tr. (Dkt. No. 867) at 949; SEC Decision (Dkt. No. 835-3) at 1) see also Amanat v. S.E.C., 269 F. App'x 217, 219 (3d Cir. 2008). For his part, Omar Amanat raised money for the Dubai-based Enable Invest Ltd. – which the evidence at trial showed was an instrument of fraud (Trial Tr. (Dkt. Nos. 644, 646, 648, 650) at 635, 663-64, 678-79, 795–97, 805, 864, 1182-83) – after Irfan Amanat relocated to Dubai. (Trial Tr. (Dkt. No. 644) at 576-77; O. Amanat PSR (Dkt. No. 773) ¶¶ 16, 18) Given that the United States has no extradition treaty with Dubai, were the Defendants to flee to that country, there would be no practical way for the United States to apprehend them. See United States v. Boustani, 356 F. Supp. 3d 246, 255 (E.D.N.Y. 2019), aff'd, No. 19-344, 2019 WL 2070656 (2d Cir. Mar. 7, 2019) ("[F]requent international travel . . . and extensive ties to foreign countries without extradition demonstrates Defendant poses a serious risk of flight.").

Moreover, both Defendants face substantial prison sentences that far exceed the time they have spent in custody to date. Based on an offense level of 35 and a Criminal History

---

[6] Omar Amanat reported annual travel to London, Japan, France, and the Czech Republic. (O. Amanat PTS Rpt. at 2; see also Trial Tr. (Dkt. No. 708) at 7296 (admitting travel to Dubai)) While residing for ten years in Dubai, Irfan Amanat travelled to London, Spain, and Italy. (I. Amanat PTS Rpt. at 2)

Category of I, the Government and the Probation Department calculate each Defendant's Sentencing Guidelines range as 168 to 210 months' imprisonment. (Mar. 18, 2020 Govt. Ltr. (Dkt. No. 1064) at 5-7; O. Amanat PSR (Dkt. No. 773) at 27-28, 49; see United States v. Scali, No. 7:16-CR-466-(NSR), 2018 WL 3410015, at *2 (S.D.N.Y. July 12, 2018), aff'd, 738 F. App'x 32 (2d Cir. 2018) ("Defendant's conviction of crimes with an overall guidelines range of 87-108 months is a factor that increases his risk of flight. Defendant faces the prospect of a long imprisonment that very likely may make him reluctant to willingly submit to incarceration.") (citing United States v. Londono-Villa, 898 F.2d at 329-30 (2d Cir. 1990)).

There is also evidence of obstruction of justice. At Omar Amanat's trial, the Government offered compelling evidence that he had introduced fabricated, purportedly exculpatory email messages into evidence. (Trial Tr. (Dkt. No. 698) at 6315-16, 6320, 6322) Such conduct demonstrates a disdain for the judicial process and an unwillingness to comply with court orders, and constitutes evidence that a defendant is a risk of flight. See United States v. Fishenko, No. 12 CR 626 SJ, 2013 WL 3934174, at *3 (E.D.N.Y. July 30, 2013) ("Defendant's alleged obstruction of justice indicates his willingness to disregard government orders and . . . makes him a significant flight risk if not detained pending trial."). The evidence offered at trial indicates that the fabrication of these emails – which were inserted onto the Yahoo server – would have required technical skills that Irfan Amanat possesses. (Trial Tr. (Dkt. No. 702) at 6562; Trial Tr. (Dkt. No. 857) at 115 (noting Irfan Amanat's computer programming background); I. Amanat PTS Rpt. at 2 (noting his employment as an "IT Consultant")

The Government further submits that both Defendants also obstructed justice by attempting to fabricate evidence that the key cooperating witnesses – Stephen Maiden and Robin

7

Smyth – were paid to testify against them. (Mar. 18, 2020 Govt. Ltr. (Dkt. No. 1064) at 1-2; supra n.1) Although the Government has presented this evidence in the form of proffers and hearsay testimony, the Court can consider such information for bail purposes. See United States v. Epstein, No. 19 CR. 490 (RMB), 2019 WL 3229190, at *4 (S.D.N.Y. July 18, 2019), appeal withdrawn, 2019 WL 5390016 (2d Cir. Aug. 21, 2019) (noting that bail determinations may be based on hearsay testimony and government proffers); Boustani, 356 F. Supp. 3d at 251 ("Because the rules concerning admissibility of evidence in criminal trials do not apply to bail hearings . . . , the parties may proceed by way of proffer. . . . As such, courts often base detention decisions on hearsay evidence.") (internal quotation marks omitted).

The proposed bail packages are not sufficient to address the risk of flight. As to Omar Amanat, he does not identify proposed co-signers to his bond. Accordingly, the ability of the co-signers to exercise suasion over him is unknown. (Mar. 13, 2020 O. Amanat Ltr. (Dkt. No. 1057) at 1) Irfan Amanat has identified proposed cosigners; they are friends and family who appear to hold substantial assets. (Mar. 17, 2020 I. Amanat Ltr. (Dkt. No. 1062) at 4)

Of concern as to both Defendants is their true financial condition. Both Defendants claim to have a negative net worth. (O. Amanat PTS Rpt. at 3; I. Amanat PTS Rpt. at 3; Mar. 31, 2020 Omar Amant Ltr. (Dkt. No. 1074) at 5) As discussed above, however, Irfan operated an asset management firm in Dubai for ten years, and the Court has no visibility into the assets he accrued there during his long tenure in that country. He reports no assets in Dubai. But just in connection with this case, millions of dollars passed through the accounts of Enable Invest, the brothers' Dubai-based investment management firm. (Trial Tr. (Dkt. Nos. 855, 857, 859) at 55, 101, 117, 140-41, 431).

Omar Amanat – who was an early investor in the fabulously successful Twilight Saga film series – purports to have made more than a hundred million dollars. (See, e.g., O. Amanat PSR (Dkt. No. 773) at 34 (noting that Omar Amanat's investment in Summit Entertainment – which produced films such as Twilight – generated a multi-million dollar return); Trial Tr. (Dkt. No. 640) at 185-86 (Omar Amanat opening statement disclosing that he had made a "tremendous amount of money" from Twilight); Trial Tr. (Dkt. No. 644) at 565 at ("[Omar Amanat] told me that in his . . . early 20s he had founded a trading company, Tradescape and sold it to E*TRADE for a hundred million dollars. . . ."))

The enormous wealth that passed through the Defendants' hands raises the possibility that they could reimburse any co-signers for amounts forfeited if they flee. See United States v. Ness, No. 01 CR. 699 (AKH), 2008 WL 3842961, at *3 (S.D.N.Y. Aug. 15, 2008) ("[I]f [the court] released [defendant] and he became a fugitive, any financial loss to [defendant's] co-signers could be recouped from funds that [he] might be able to access in foreign countries.").

Given these circumstances, the Court cannot conclude by "clear and convincing evidence" that Defendants are not flight risks under 18 U.S.C. § 3143(a)(1). See Abuhamra, 389 F.3d at 320 ("18 U.S.C. § 3143(a)(1) creates a presumption in favor of detention; it places the burden on the defendant to defeat that presumption; and it requires the defendant to carry that burden by clear and convincing evidence, not by a mere preponderance. Only if a defendant clears these high procedural hurdles is he entitled to release pending sentencing.").

Defendants' arguments about the health risks associated with COVID-19 do not address the risk of flight issue under Section 3143(a)(1). "'As serious as it is, the outbreak of COVID-19 simply does not override the statutory detention provisions [of the Bail Reform Act].

In the absence of evidence demonstrating a change in circumstances concerning [Defendants'] status as a flight risk . . . , detention pending sentence must be maintained.'" United States v. Deonte Cooper, No. 1:18-CR-126 EAW, 2020 WL 1577852, at *3 (W.D.N.Y. Mar. 30, 2020) (quoting United States v. Rollins, 19-CR-34S, 11-CR-251S (WMS), 2020 WL 1482323, at *2 (W.D.N.Y. Mar. 27, 2020)).

To the extent that Defendants seek bail under 18 U.S.C. § 3142(i) – on the theory that COVID-19 represents a "compelling reason" for release (O. Amanat Ltr. (Dkt. No. 1057) at 8-9) – this provision is part of Section 3142, which governs the "[r]elease or detention of a defendant pending trial." 18 U.S.C. § 3142. This provision has no obvious application to defendants who have been found guilty at trial, and await sentencing.[7] See United States v. McDuffie, No. 19-CR-212 (VEC), 2020 WL 1659879, at *1 (S.D.N.Y. Apr. 3, 2020) (finding that 18 U.S.C. § 3142(i) does not apply to a defendant awaiting sentencing); United States v. Charles Hartsell, No. 3:19-CR-14(02), 2020 WL 1482175, at *1 (N.D. Ind. Mar. 25, 2020) ("18 U.S.C. § 3142 applies to the release or detention of a defendant pending trial, but [defendant] is pending sentencing. . . . 18 U.S.C. § 3143(a) applies to the release or detention of a defendant pending sentencing, and that statute has no corresponding cousin to 18 U.S.C. § 3142(i) that would authorize temporary release for a compelling reason."); United States v. Bolze, No. 3:09-CR-93, 2010 WL 199978, at *2 (E.D. Tenn. Jan. 13, 2010) ("[T]he Court questions the applicability of [18 U.S.C. § 3142(i)] to the instant inquiry because the Defendant is no longer in 'pretrial' detention, rather he is detained post-plea, pending sentencing. Section 3143(a), which governs release or detention pending sentencing, contains no language providing

---

[7] 18 U.S.C. § 3142(i) authorizes courts to "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

for temporary release."). Even if the Court were to conclude that this subsection applies to defendants who have been convicted at trial, Defendants have not cited any law suggesting that Section 3142(i) overrides Section 3143(a)(1)'s mandate that defendants awaiting sentencing be detained absent clear and convincing evidence that they are not flight risks or dangers to the community. 18 U.S.C. § 3143(a)(1).[8]

## CONCLUSION

For the reasons stated above, Defendants' applications for bail pending sentencing are denied. The Clerk of Court is directed to terminate Dkt. Nos. 1062, 1063, 1065, 1066, 1068, 1070, 1071, 1072, and 1074.

Dated: New York, New York
April 13, 2020

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge

---

[8] Defendants also cite the Attorney General's March 26, 2020 Memorandum, which authorizes the Bureau of Prisons to release prisoners who meet certain criteria in response to the COVID-19 pandemic. (Mar. 29, 2020 I. Amanat Ltr. (Dkt. No. 1071); Mar. 29, 2020 O. Amanat Ltr. (Dkt. No. 1072)) As Defendants acknowledge, however, this memorandum applies only to sentenced inmates.

11