UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA      :
          :
      -v.-      :      S8 15 Cr. 536 (PGG)
          :
OMAR AMANAT,      :
          :
        Defendant.      :
-------------------------------------------------------x


### THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT OMAR AMANAT'S MOTION FOR A NEW TRIAL PURSUANT TO F.R.C.P. 33

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
Attorney for the United States of America


Andrea M. Griswold
Joshua Naftalis
Daniel Tracer
Assistant United States Attorneys
    *- Of Counsel -*

**Tables of Contents**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

   I.   Procedural History ................................................................................................... 2

   II.  Relevant Facts ......................................................................................................... 4

LEGAL STANDARD ............................................................................................................... 6

ARUGMENT ......................................................................................................................... 9

   I.   Omar's Collateral Attack on His Conviction Does Not Constitute Newly Discovered

   Evidence Within the Meaning of Rule 33 and Is Time Barred ................................................... 9

   II.  Omar Has Failed to Plead Any Newly Discovered Material Evidence ........................... 11

   III.  Omar's Newly Discovered Evidence Did Not Undermine the Fairness of His Trial ....... 13

CONCLUSION ...................................................................................................................... 17

## Tables of Authorities

*Douglas v. United States*, 09 Civ. 9566 (CM), 04 Cr. 1064 (CM) ................................. 11

*Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974)..................................................... 14

*Massaro v. United States*, 538 U.S. 500 L.Ed.2d 714 (2003)....................................... 11

*Matthews v. United States*, 682 F.3d 180 (2d Cir. 2012) ............................................ 11

*Rudaj v. United States,* 2011 WL 2610544 (S.D.N.Y.) ................................................ 11

*United States v. Aguiar*, 737 F.3d 251 (2d Cir. 2013) ................................................... 8

*United States v. Barcelo*, 628 Fed. App'x 36 (2d Cir. 2015)....................................... 14

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991).............................................. 11

*United States v. Blake*, 10 Cr. 349 (RPP), 2011 WL 3463030 (S.D.N.Y. Aug.5, 2011)............ 8, 9

*United States v. Bourke*, 05 Cr. 510, 2011 WL 6376711 (S.D.N.Y. Dec. 15, 2011)..................... 7

*United States v. Cammacho*, 462 Fed. App'x 81 (2d Cir. 2012) ...................................... 8

*United States v. Castillo*, 14 F.3d 802 (2d Cir. 1994)................................................. 8, 10

*United States v. DiPietro*, 278 Fed. App'x 60 (2d Cir. 2008) ................................... 10, 11

*United States v. Dukes*, 727 F.2d 34 (2d Cir. 1984) ................................................. 8, 10

*United States v. Farrah*, 128 F.Supp.2d 103 (D.Conn.2001) ........................................... 8

*United States v. Ferguson*, 246 F.3d 129 (2d Cir. 2001) ................................................ 8

*United States v. Gambino*, 59 F.3d 353 (2d Cir. 1995) .................................................. 7

*United States v. Imran*, 964 F.2d 1313 (2d Cir. 1992)................................................... 7

*United States v. Jiau*, 11 Cr. 161, 2015 WL 12683668 (S.D.N.Y. Feb. 3, 2015)......................... 7

*United States v. Ketabchi,* 17 Cr. 243-3 (SHS), 2019 WL 1510444 (S.D.N.Y. Mar. 25, 2019) .... 7

*United States v. Mayo*, 14 F.3d 128 (2d Cir. 1994) ................................................... 8, 10

*United States v. Meregildo*, 920 F. Supp. 2d 434 (S.D.N.Y. 2013)................................... 14

*United States v. Mergen*, 06 Cr. 352 (NGG), 2012 WL 1565450 (E.D.N.Y. May 2, 2012) ...... 7, 8

*United States v. Nosov*, 00 Cr. 314, 2003 WL 21012027 (S.D.N.Y. May 5, 2003) ...................... 7

*United States v. Nuculovic*, 04 Cr. 1110 (DC), 2006 WL 3591930 (S.D.N.Y. Dec. 12, 2006)...... 7

*United States v. Owen*, 500 F.3d 83 (2d Cir. 2007) ............................................................. 7, 12, 13

*United States v. Peterson*, 233 F.Supp.2d 475 (E.D.N.Y.2002)................................................. 8, 9

*United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015) ................................................................. 14

*United States v. Pinson*, 584 F.3d 972 (10th Cir.2009) ............................................................. 11

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Omar Amanat's ("Omar") motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33") on the basis of purportedly newly discovered evidence concerning Spyros Enotiades (the "CHS"). (Dkt. No. 1112 ("Omar Mot.")). Though styled as a motion based on newly discovered evidence, the motion is in fact a collateral attack on his conviction based on ineffective assistance of counsel due to the CHS's supposed conflict of interest. It is well-settled in the Second Circuit that such collateral attacks fall outside the scope of Rule 33's definition of newly discovered evidence, even where the defendant learns of the facts giving rise to the claim after trial. Accordingly, Omar's motion must be denied as time barred under Rule 33's 14-day deadline for all claims other than those based on newly discovered evidence.

Omar's motion is also utterly meritless. First, he has not set forth any newly discovered material evidence. Omar's motion repeatedly concedes that when he hired the CHS he was well-aware that the CHS was an active government informant in close connection with federal law enforcement, including the U.S. Attorney's Office for the Southern District of New York ("USAO-SDNY"). That is why he purportedly hired the CHS in the first place – to take advantage of those connections. Omar's failure to identify any newly discovered evidence is fatal to his motion. Second, the CHS's connections to the FBI squad prosecuting this case could not possibly have given rise to a Due Process violation or otherwise undermined the fairness of Omar's trial because the CHS's actions and dealings with Omar are in no way attributable to the Government. As the record in this case makes clear, the prosecution team had absolutely no communications with the CHS about Omar (or any of his co-defendants) until July 2018, months *after* Omar had been convicted at trial. Indeed, this Court has already rejected similar claims

1

made by Omar and his co-defendant Irfan Amanat's ("Irfan") letter-motions seeking additional pre-*Fatico* discovery in August 2019.  (Dkt. No. 1029).

Accordingly, and for the reasons set forth below, the defendant's motion should be denied.

## BACKGROUND

### I.  Procedural History

On December 26, 2017, Omar was convicted after a jury trial of one count of conspiracy to commit wire fraud, one count of wire fraud, one count of aiding and abetting investment advisor fraud, and one count of conspiracy to commit securities fraud for his role in an egregious, multiyear scheme to defraud investors of Kit Digital, a publicly-traded media company, and Maiden Capital, a Charlotte-based hedge fund.  After trial, Omar was immediately remanded based on, among other things, his risk of flight and his "disregard and disdain for the Court and for legal process" as evidenced by his fabrication of evidence at trial.  (Omar Tr. 7328).[1]  Omar's brother and co-defendant Irfan was severed for trial, and on October 29, 2018 was convicted of one count of conspiracy to commit wire fraud, one count of wire fraud, one count of aiding and abetting investment advisor fraud, and one count of conspiracy to commit securities fraud, to make false statements in SEC reports, and to make false statements to auditors for his role in the same scheme.  Irfan was also remanded after trial based on his risk of flight, and in light of the "overwhelming" evidence presented against him at trial.  (Irfan Tr. 948-

---

[1] Along with the instant motion, Omar has also filed a supplemental motion pursuant to Rule 33 arguing that three years after his conviction, he has now discovered information showing that he did not fabricate evidence at trial.  (Dkt. Nos. 1113 & 1114).  Omar however failed to provide the Government with the purportedly newly discovered electronic evidence underlying that motion. Once the Government receives that information, it will address that motion separately.

51).

Immediately following Irfan's trial, the Government presented the Court with evidence that both Omar and Irfan had attempted to fabricate evidence by creating a fraudulent affidavit for submission to this Court falsely reflecting that cooperating witnesses Steven Maiden and Robin Smyth had been paid by a business rival of Omar to testify falsely against Omar (the "Obstruction Conduct"). The Government first learned of the Obstruction Conduct in July 2018 when the CHS brought it to the attention of the FBI squad prosecuting this case. Omar and Irfan's engagement in the Obstruction Conduct further evidences their disdain and disregard for the law and constitutes a basis for a 2-level sentencing enhancement against both Omar and Irfan.[2] The Government was unable to call the CHS to testify about the Obstruction Conduct immediately following Irfan's trial because the CHS required medical attention. Instead, the Court set a *Fatico* hearing for April 5, 2019, but subsequently adjourned the hearing a number of times in order to (a) allow Omar, who had obtained new counsel in the interim and to whom the 2-level enhancement based on the Obstruction Conduct would equally apply, to participate in the proceedings (Dkt. No. 943), and (b) because of numerous subsequent applications by Omar and Irfan to obtain pre-*Fatico* discovery. (*See* Dkt. Nos. 1020 (the "Irfan Letter"), 1027 (the "Omar Letter"), 1039 (motion by Irfan for additional discovery)). Omar and Irfan have since withdrawn their pre-*Fatico* discovery applications and have asked this Court to schedule dates for the *Fatico* hearing and sentencing. (*See* Dkt. Nos. 1082, 1084, 1085). The Government joins in those requests to proceed with the *Fatico* hearing, if still requested by Omar and Irfan, and to

---

[2] With respect to Omar, the Obstruction Conduct provides an additional basis for an obstruction enhancement, as the enhancement would already be warranted based on Omar's introduction of forged email evidence at his trial.

scheduling a date for sentencing.

## II. Relevant Facts

The Irfan Letter and the Omar Letter in August 2019 did not just request pre-*Fatico*
discovery.  In addition, the Irfan Letter and the Omar Letter alleged that given that the CHS had
provided the FBI with information about Omar and Irfan's engagement in the Obstruction
Conduct, the CHS's dealing with Omar and Irfan's defense teams before and during Omar's trial
created Due Process concerns that "may result in grounds for motions to dismiss the charges, a
request for a new trial, a request for further discovery, and a request to modify Irfan Amanat's
bail conditions."  (Irfan Letter at 1; *see also* Omar Letter at 1 (seeking "to determine whether
[Omar] Amanat has grounds for a new trial, or some other relief, based on due process
violations")).

The Government responded to the Irfan Letter and the Omar Letter that it was willing to
confer about pre-*Fatico* discovery, but that the Due Process allegations raised by Iran and Omar
based on their dealings with the CHS were meritless and provided no basis for further relief.
(Dkt. No. 1028 (the "Govt. Letter")).  The Government refuted all of Omar's allegations with
overwhelming and comprehensive evidence, including a detailed sworn affidavit by FBI Special
Agent Julie Amato, the FBI's case agent for this prosecution.  (*Id.*, Ex. A (the "Amato Decl."))[3].
As set forth in the Government's letter and the accompanying Amato declaration, the
Government had no communications with the CHS about Omar or Irfan until July 2018, months
after Omar had already been convicted at trial.  By way of background, the CHS has worked in

---

[3] Unredacted versions of the Government's August 2019 letter and the Amato Declaration will be
provided to the Court along with this Memorandum, to be maintained under seal as they were
when originally filed.

4

some capacity with the U.S. Drug Enforcement Administration (the "DEA") for a number of years. (Amato Decl. ¶ 8). Prior to December 2017, the CHS "mentioned to his DEA handlers that he was in communication with Omar." (*Id.*). The DEA, however, never tasked the CHS "with any work related to Omar, Irfan, or any topic related to" Omar's prosecution. (*Id.*). The CHS has also testified at trials, including trials conducted by the USAO-SDNY, wholly unrelated to the Amanats (*see, e.g.*, Irfan Letter at 2).

In 2009, the CHS worked as a source for an FBI squad in Texas and was compensated for that work. (Amato Decl. ¶ 5). The FBI squad in Texas did not work on this matter, and the CHS's work with that squad had no relation to the Amanats. (*Id.*). In or about August 2011, the CHS became a source for the FBI's New York squad that was involved in this matter and the CHS was supervised by a member of the squad (the "FBI Handling Agent"). (Amato Decl. ¶ 6). Between 2011 and 2013, as part of his work with the FBI New York squad, the CHS was tasked with "relatively few assignments." (*Id.*). None of these assignments had any relation to the Amanats, and the CHS was last paid for his work by the FBI New York squad in 2013. (*Id.*). Between 2011 and 2017, the CHS continued to "provide the FBI Handling Agent with unsolicited information about matters of potential interest to the FBI." (*Id.* ¶ 7). No information provided during this time related in any way to the Amanats. (*Id.*). The FBI Handling Agent was also never informed by anyone at the DEA that the CHS had mentioned the Amanats to the DEA. (*Id.* ¶ 8).

On or about July 20, 2018, the CHS first mentioned to the FBI Handling Agent that he had information related to the Amanats, and the FBI Handling Agent promptly informed Special Agent Amato of this fact. (*Id.* ¶ 9). Special Agent Amato first spoke with the CHS about the Amanats on or about July 31, 2018, and spoke or met with the CHS over a dozen times between

August and October 2018.  (*Id.* ¶ 10).  Special Agent Amato also attended a few meetings with the CHS and the USAO-SDNY in August and October of 2018.  (*Id.*).  Each of these meetings was memorialized in FBI notes (the "FBI Reports"), and all of the FBI Reports were provided to the USAO-SDNY by October 29, 2018.  (*Id.*).  All of the information that the CHS provided to the FBI and the USAO-SDNY between July and October 2018 related to past events that had occurred in connection with the Amanats.  (*Id.* ¶ 12).  "At no time did the FBI task or direct [the CHS] to take any action relating to either Omar or Irfan Amanat."  (*Id.* ¶ 13).  To the contrary, Special Agent Amato instructed the CHS on more than one occasion that the FBI was specifically not asking or directing him to take any action with regard to the Amanats.  (*Id.*).  "At no time has the FBI compensated [the CHS] in any manner, financial or otherwise, for the information he provided regarding Omar and Irfan Amanat."  (*Id.* ¶ 14).  During his meetings with the FBI and the USAO-SDNY in August through October 2018, the CHS provided information about the Obstruction Conduct as well as relevant documents and communications. (*Id.* ¶¶ 15-16).

On August 30, 2019, after the Government submitted its letter along with the Amato declaration, the Court declined to order any of Omar (or Irfan's) requested relief, but instead ordered the parties to confer on pre-*Fatico* discovery, as the Government had requested.  (Dkt. No. 1029).  The parties conferred and the Government has since provided the defendants with ample discovery related to the Obstruction Conduct, including all of the relevant FBI Reports and documentary evidence as well as the results of searches conducted of the Prosecutions Team's records and questions propounded to the CHS.  (Dkt. No. 1031).

## LEGAL STANDARD

Rule 33 provides two deadlines for the filing of motions for a new trial: "[a]ny motion for

a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty," whereas a motion based on any other ground must be filed within 14 days. Rule 33(b)(1) & (b)(2). While these time limitations are not jurisdictional, they are strictly enforced when raised by an opposing party. *United States v. Nuculovic*, 04 Cr. 1110 (DC), 2006 WL 3591930, at *6 (S.D.N.Y. Dec. 12, 2006). Courts routinely dismiss motions under Rule 33 that fail to comply with the rule's time limits. *See, e.g.*, *United States v. Ketabchi,* 17 Cr. 243-3 (SHS), 2019 WL 1510444, at *4 (S.D.N.Y. Mar. 25, 2019); *United States v. Jiau*, 11 Cr. 161, 2015 WL 12683668, at *1 (S.D.N.Y. Feb. 3, 2015); *United States v. Mergen*, 06 Cr. 352 (NGG), 2012 WL 1565450 (E.D.N.Y. May 2, 2012); *United States v. Bourke*, 05 Cr. 510, 2011 WL 6376711 (S.D.N.Y. Dec. 15, 2011); *United States v. Nosov*, 00 Cr. 314, 2003 WL 21012027, at *1 (S.D.N.Y. May 5, 2003). The time limits set forth in Rule 33 can only be extended after the time has expired "if the party failed to act because of excusable neglect." Fed. R. Crim. Pro. 45(b)(1)(B).

With respect to a Rule 33 motion based on newly discovered evidence, a defendant must show that "(1) the evidence be newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal." *United States v. Owen*, 500 F.3d 83, 88 (2d Cir. 2007). Facts that a defendant was aware of, or could have learned, prior to trial cannot constitute newly discovered evidence. *Id.* 500 F.3d at 89-90. "A district court must exercise great caution in determining whether to grant a retrial on the ground of newly discovered evidence, and may grant the motion only in the most extraordinary circumstances." *United States v. Imran*, 964 F.2d 1313, 1318 (2d Cir. 1992) (internal citations omitted); *see also United States v. Gambino*, 59 F.3d 353, 364 (2d

7

Cir. 1995) ("Because motions for a new trial are disfavored in this Circuit the standard for granting such a motion is strict; that is, newly discovered evidence must be of a sort that could, if believed, change the verdict." (citation omitted)).  "The ultimate test is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (internal quotation marks and alteration omitted).  In other words, "there must be a real concern that an innocent person may have been convicted." *Id.* (internal quotation marks and edits omitted).

It is well-settled in the Second Circuit that Rule 33's definition of newly discovered evidence is limited to "newly discovered evidence going to [to the defendant's] innocence or guilt" of the charged crimes. *United States v. Dukes*, 727 F.2d 34, 39 (2d Cir. 1984).  "'The longer period provided by [Rule 33] for a motion based on newly discovered evidence applies only to motions that address the issues **raised by the criminal charges**, not to motions that raise collateral issues such as the effectiveness of trial counsel.'"  *United States v. Cammacho*, 462 Fed. App'x 81, 83 (2d Cir. 2012) (quoting *United States v. Mayo*, 14 F.3d 128, 132 (2d Cir. 1994)).  Accordingly, "[t]he Second Circuit has held consistently 'that ineffective assistance claims do not present new evidence within the meaning of Rule 33.'"  *Mergen*, 2012 WL 1565450, at *2 (quoting *United States v. Castillo*, 14 F.3d 802, 805 (2d Cir. 1994) (citing *Dukes*, 727 F.2d at 39)); *United States v. Blake*, 10 Cr. 349 (RPP), 2011 WL 3463030, at *4 (S.D.N.Y. Aug.5, 2011); *United States v. Peterson*, 233 F.Supp.2d 475, 486–88 (E.D.N.Y. 2002); *United States v. Farrah*, 128 F.Supp.2d 103, 115 n.2 (D.Conn. 2001).  "That is the case regardless of whether the defendant was aware of the information forming the basis of his ineffective assistance claim before the verdict."  *Mergen*, 2012 WL 1565450, at *2 (citing *Dukes*, 727 F.2d at 39 ("It is true that most defendants cannot and do not realize the inadequacies of trial

8

counsel's performance until well after trial. But . . . the practical difficulties faced by defendants seeking to raise ineffective-assistance-of-counsel claims by way of motion for a new trial do not give us cause to corrupt the clear language of Rule 33." (alterations omitted))); *Blake*, 2011 WL 3463030, at *3–*4 (denying as untimely defendant's motion for new trial based on ineffective assistance even though defendant allegedly learned about the information giving rise to his claim "several months after his conviction"); *Peterson*, 233 F.Supp.2d at 487 ("The Court reads *Castillo* as the rule in the Second Circuit that ineffective assistance claims, whether based on facts known to the defendant at the time of trial or facts learned by the defendant after trial, do not present newly discovered evidence under Rule 33.").

**ARUGMENT**

## I.   Omar's Collateral Attack on His Conviction Does Not Constitute Newly Discovered Evidence Within the Meaning of Rule 33 and Is Time Barred

Omar's motion has nothing to do with the charges in this case and raises no issues going to his guilt or innocence of the charged offenses.  Omar's motion lacks, for example, any evidence that he did not defraud investors, engage in market manipulation, or that he was not involved in any of the conduct for which he was charged and convicted.  Instead, the supposedly "newly discovered" evidence raised by Omar is that the CHS, while acting as part of his defense team, failed to deliver on a number of promises made to Omar to assist in his defense (Omar Mot. at 4-8), and that the CHS suffered from a conflict-of-interest because the CHS had a working relationship with the FBI squad prosecuting this case (*id.* at 8-9)  Omar complains that these failures by the CHS and the CHS's supposed conflict-of-interest deprived Omar of the effective assistance of counsel at trial in violation of his Sixth Amendment rights.  (*See, e.g.*, *id.* at 8-9 ("[The CHS] had a conflict of interest that violated [Oamr's] Sixth Amendment right to

9

counsel."); 12 (explaining that the actions of the CHS were "undermining [Omar's] Sixth Amendment Rights"); 14 ("[The CHS's work on Mr. Amanat's case undermined his very right to an impartial defense and a fair trial."); 17 ("[The CHS's] actions violated [Omar's] rights to representation.")).

Omar's motion is thus the quintessential example of a collateral attack, sounding in ineffective assistance of counsel, falling outside the scope of Rule 33's expanded 3-year limitation for motions based on newly discovered evidence. *See Mayo*, 14 F.3d at 132; *Castillo*, 14 F.3d at 805; *Dukes*, 727 F.2d at 39. Instead, Omar's motion is governed by Rule 33's 14-day deadline applicable to all other motions for a new trial and must be denied. The fact that Omar claims to have discovered some of the facts giving rise to these claims after his trial is of no moment. As the Second Circuit stated in *Dukes*, "[i]t is true that most defendants cannot and do not realize the inadequacies of trial counsel's performance until well after trial. But . . . the practical difficulties faced by defendants seeking to raise ineffective-assistance-of-counsel claims by way of motion for a new trial . . . do not give us cause to corrupt the clear language of Rule 33." 727 F.2d at 39. Here too, it is irrelevant when Omar learned of any of the facts giving rise to his claim. His motion is clearly a collateral attack that does not relate to the charges in the case and is thus untimely under clear Second Circuit precedent. Omar does not even acknowledge, let alone provide an explanation for this glaring defect in his motion.

Of note, the fact that Omar's claim is time barred under Rule 33 does not mean that Omar is without recourse to pursue his claim. As courts have recognized, claims of ineffective assistance of counsel are more properly pursued in 28 U.S.C. § 2255 proceedings. *See Dukes*, 727 F.2d at 29 ("That decision does not leave defendants remediless, since most claims of ineffective assistance of counsel may be brought under § 2255"); *United States v. DiPietro*, 278

Fed. App'x 60, 61 (2d Cir. 2008) (citing *Massaro v. United States*, 538 U.S. 500, 504-05, 123

S.Ct. 1690, 155 L.Ed.2d 714 (2003)).  In those post-judgment collateral proceedings, the Court

can benefit from a "trial record [] developed precisely for the object of litigating [] that claim,"

*DiPietro*, 278 Fed. App'x at 16, including an affidavit from the former attorney which is

typically warranted by the waiver of attorney-client privilege inherent in the claim of ineffective

assistance.  *See Rudaj v. United States,* 2011 WL 2610544 (S.D.N.Y.) (citing *United States v.

Pinson*, 584 F.3d 972, 978 (10th Cir. 2009)); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d

Cir. 1991); *Douglas v. United States*, 09 Civ. 9566 (CM), 04 Cr. 1064 (CM), Decision and Order

Regarding Attorney Client Privilege (filed Jan. 28, 2011) ("Because the need for the attorney's

testimony was patent and the waiver of privilege plain, it has become the practice for attorneys to

supply the required testimony.").  Indeed, the primary case that Omar relies upon in his motion –

*Matthews v. United States*, 682 F.3d 180, 182 (2d Cir. 2012) – involves a claim for ineffective

assistance of counsel brought under section 2255 and not a motion under Rule 33.  Similarly, to

the extent Omar believes there is any merit in his motion, it would be more properly considered

in the context of a section 2255 motion following the entry of judgment.

In sum, Omar's collateral attack on his conviction does not constitute newly discovered

evidence under Rule 33 and his motion should be denied as time-barred.

## II.  Omar Has Failed to Plead Any Newly Discovered Material Evidence

Even if the Court were to consider Omar's motion, the motion does not actually include

any material information that was newly discovered.  Omar's supposedly newly discovered

evidence is "that [the CHS] had been working with the same FBI squad that was prosecuting

[Omar]" when Omar hired the CHS to assist with his defense.  (Omar Mot. at 3; 10 ("It was only

during the process of litigating this matter [in 2019] that the government divulged that [the CHS]

had been working with the same FBI squad that was prosecuting [Omar] since 2011.")).  As Omar concedes in numerous places in his motion, however, Omar was aware when he hired the CHS that the CHS had been a government informant for years – and was continuing to work in that capacity while being retained to assist with Omar's defense.  (*See, e.g.*, Omar Mot. at 2 (noting that it was explained to Omar that the CHS was a "government insider"); 4 (Omar provided funds to the CHS to engage in assisting government operations); 10)).  Indeed, the CHS's connections to government and his role as an "insider" was the chief reason that Omar hired him.  (*Id.* at 2).  Omar cannot now complain that he is surprised by the CHS's working relationship with law enforcement.

Moreover, Omar's motion reveals that he actually always understood the CHS to have a specific professional connection with the USAO-SDNY – the office prosecuting this case – and yet retained his services.  For example, Omar asserts that "[the CHS] represented to [Omar] that [the CHS] was meeting with the government to discuss [Omar's] case to acquire some type of cooperation agreement or dismissal for him."  (*Id.* at 4).  Plainly, Omar could only have expected the CHS to negotiate an agreement on his behalf to resolve this case if the CHS had "insider" relationships with Government agencies and individuals responsible for handling Omar's case.  Likewise, Omar admits that he knew that the CHS had worked "closely" with Omar's attorney Randall Jackson while Jackson worked at the USAO-SDNY, including in investigating and prosecuting cases.  (*Id.* at 5 & n.5).  In other words, by his own admission, Omar always understood that the CHS was an active governmental source who was working with government agencies, including the same agencies responsible for Omar's case, at the same time Omar hired him.  Accordingly, there is nothing "new" about the information set forth in his motion.

In addition, evidence is not considered newly discovered if a party could have obtained it

earlier with due diligence. *Owen*, 500 F.3d at 88. To the extent that Omar would truly have been concerned about the CHS having a relationship with the FBI squad prosecuting his case, Omar has provided no reason why he could not have asked the CHS this straightforward question as part of his defense-related engagement years ago. Having apparently failed to inquire as to which governmental agencies the CHS had connections with, Omar cannot now complain that he is surprised that the CHS had a working relationship with the FBI squad prosecuting this case. Omar's claim in response, that [the CHS] promised [Omar] that he had no conflicts of interest" (Omar Mot. at 11), rings hollow. Omar was well aware of the CHS's relationship with law enforcement, including the USAO-SDNY and the FBI, and believed that the CHS was negotiating with law enforcement about his case. Clearly, Omar himself did not believe this was a conflict-of-interest at the time, and Omar has set forth no new facts that create a conflict.

In sum, Omar's motion is not actually based on any newly discovered material evidence. Accordingly, his motion is subject to the 14-day time limit applicable to all other motions under Rule 33. Under that standard, Omar's motion is years late and must be dismissed. Omar also cannot possibly show excusable neglect for this late filing under Rule 45. By his own admission, Omar was well aware that he hired a government "insider" to assist with his defense and to the extent he actually believed that created any improprieties before or during his trial, he could have, and should have, pursued those issues promptly.

### III.  Omar's Newly Discovered Evidence Did Not Undermine the Fairness of His Trial

Finally, none of the information set forth in Omar's motion could possibly have given rise to a Due Process violation or undermined Omar's right to a fair trial. To state a claim under Rule 33, Omar must show that the new information was material and that it likely would have

13

led to an acquittal.  *See Owen*, 500 F.3d at 88 (explaining that new evidence must be material and would likely result in acquittal).  Omar alleges that his newly discovered evidence about the CHS meets this standard because it gives rise to potential Due Process violations and otherwise interfered with the fairness of his trial.  (*See* Omar Mot. at 14 ("[The CHS's] involvement in [Omar's] defense is deeply troubling and clearly at odds with [Omar's] Sixth Amendment Due Process Right [sic]."); 15-16 ("[the CHS's] actions irreparably harmed [Omar's] defense, his right to due process, and the effective assistance of counsel.")).  The facts alleged by Omar however cannot possibly give rise to a Due Process violation or other unfair governmental interference because the CHS's actions before and during Omar's trial were not attributable to the Government.

It is elementary that Due Process violations can only arise from governmental, rather than private action.  *See, e.g.*, *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974).  In the context of claims sounding in Due Process or prosecutorial misconduct that undermines the fairness of trial, such violations must be attributable to the team or unit that was actually involved in the underlying prosecution.  The law in this circuit firmly establishes however that the CHS was never part of the legally-significant prosecution team in this case by dint of the mere fact that he provided the FBI squad with some unrelated information between 2011 and 2017.  *See United States v. Meregildo*, 920 F. Supp. 2d 434, 441 (S.D.N.Y. 2013), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015); *United States v. Barcelo*, 628 Fed. App'x 36, 39 (2d Cir. 2015) (explaining that the prosecution team includes those involved in core prosecutive functions such as the performance of investigative duties and making strategic decisions about prosecutions).  At set forth in the Amato Declaration, the FBI squad handling this case had no communications with the CHS about Omar (or any of his co-defendants) prior to July 2018 and

the FBI squad handling this case *never* gave any instructions to the CHS concerning Omar.  The CHS's relationship with the FBI squad prosecuting this case prior to July 2018 was no different than the CHS's relationship with any other branch of government vis-à-vis Omar; the CHS was simply providing help and information on unrelated matters.  Thus, any advice, recommendations, or promises that the CHS made to Omar prior to July 2018 cannot be attributed to the Government.  The Government had no knowledge of, or any role in, those dealings.  At the time the CHS reported on his dealings with the Amanats to the Government in July 2018, that information was purely historical and based on a voluntary course of dealing between Omar and the CHS.  Put simply, the CHS's dealings with Omar were the result of private rather than Government action and did not occasion a Due Process violation or otherwise interfere with the fairness of Omar's trial.

In fact, both Omar and Irfan made nearly identical allegations – that the CHS's role as a government informant had violated their rights to a fair trial – in the Irfan Letter and the Omar letter in August 2019.  The Court, however, after receiving the Government's letter and the Amato Declaration, refused to order any remedy and instead adopted the Government's recommendation ordering the parties to confer about pre-*Fatico* discovery.  (Dkt. No. 1029).  Omar's allegations are as baseless now as they were then.  Omar has put forth absolutely no evidence that contradicts the Amato Declaration or even remotely suggests that the Government played any role in Omar's course of dealing with the CHS.  Instead, Omar makes the desperate and lawless assertion that "[t]he government should not be allowed to hide behind its own classification of 'prosecution squad' to attempt to deprive [Omar] of his due process right." (Omar Mot. at 18).  The Government is of course not hiding behind anything.  Given that the CHS played no role in the investigation or prosecution of this case, the CHS was not part of the

15

prosecution team and his actions are not attributable to the Government in any Due Process analysis.

Omar's other complaints about his interactions with the CHS come nowhere near the standard for constitutional violations or manifest injustice.  For instance, other than abstract rhetoric about undermining the fairness of the proceedings, the specific harm identified by Omar include: "[the CHS] influenced [Omar's] choice of counsel; he facilitated his last-minute hiring of someone with whom [the CHS] had worked closely at the SDNY US Attorney's Office. [The CHS] encouraged [Omar and Irfan] to hold out for 'real' plea agreements with guaranteed probation, or a dismissal of the charges – unobtainable resolutions to [Omar's] case."  (Omar Mot. at 12).  But it is wholly unclear how Omar's choice of trial counsel – an experienced lawyer who litigated this case to the hilt – or the fact that Omar thought he might get a plea agreement with probation injected any unfairness into these proceedings, let alone constitute the kind of facts that would have resulted in an acquittal.  Likewise, Omar's complaints that he was "disrupted and distracted" by the CHS, or that he got bad "advice" (Omar Mot. at 12) are a far cry from the kinds of fundamental concerns that justify the extraordinary relief he requests under Rule 33.

In sum, nothing in Omar's motion comes even close to suggesting a manifest injustice or the conviction of an innocent person and his motion cannot meet the standard of Rule 33.

16

## CONCLUSION

For the reasons set forth above, the defendant's motion for a new trial should be denied.

Dated:   New York, New York
         January 19, 2021

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By:   _____/s/_____
      Andrea M. Griswold
      Joshua Naftalis
      Daniel Tracer
      Assistant United States Attorneys
      Tel.: (212) 637-1205/2310/2329

17